MAX SCHUMANN, MICHAEL ALBERT and BENJAMIN ALBERT, complainants, DEWEY ALBERT and BENJAMIN ALBERT, as administrators of the estate of Morris Albert, deceased, complainants-appellants,

*v.*

FIDELITY UNION TRUST COMPANY, individually and as trustee, &c., defendant-respondent.

[Argued February 13th, 1940.   Decided April 25th, 1940.]

*Messrs. Lichtenstein, Schwartz & Friedenberg (Mr. Harry Schwartz* and *Mr. Howard Engel),* for the complainant-appellants.

*Messrs. Hood, Lafferty & Campbell (Mr. Charles Danzig),* for the defendant-respondent.

The opinion of the court was delivered by

CASE, J.

The appeal is from a Chancery decree dismissing the bill of complaint. The bill sought to restrain the defendant trustee from proceeding with an action at law to recover a deficiency which arose from mortgage foreclosure proceedings.

A real estate mortgage in the amount of $75,000 was given on March 24th, 1925, by the corporate owner to the Fidelity Union Title and Mortgage Guaranty Company. There were

subsequent changes in the corporate entity of the mortgagee which do not enter into the controversy and which we shall disregard. The bond was signed by the corporate owner and two individuals. About a year later the land was conveyed to another corporation, Parlane Realty Company, subject to the mortgage. On February 27th, 1928, that purchaser and the Fidelity Company executed an agreement extending the due date of the mortgage; and the Parlane Company, Max Schumann and Morris Albert (now deceased) contemporaneously with the execution of the agreement, and as consideration for the same, signed a bond obligating themselves jointly and severally to the Fidelity Company in the penal sum of $138,000 conditioned upon payment by the obligors of the sum of $69,000 principal, plus interest. It is upon this bond that the deficiency suit, which appellants would enjoin, was brought at law. The bond recites the original bond and mortgage, the conveyance of the land to Parlane, the request by that corporation for an extension of the time for payment and that "the said obligee has agreed to extend the payment of the said principal sum as aforesaid, provided the obligors herein shall execute and deliver a bond to the said obligee in the penal sum of $138,000 conditioned as hereinafter expressed." The condition is "that if the above bounden obligors * * * shall * * * pay * * * unto the above named obligee * * * $69,000, lawful money aforesaid on the first day of April, 1931, and interest * * * then the above obligation to be void, otherwise to remain in full force and virtue * * *." Parlane a year and a half later conveyed the lands to George F. Durr and Martha Durr, his wife, subject to the mortgage of $69,000. The Durrs entered into an agreement with Fidelity whereby the time of the payment of the principal was still further extended and in consideration of the extension the Durrs executed to Fidelity their joint and several bond. In 1937 Fidelity foreclosed and bought in the property. The order confirming sale was dated September 26th, 1938. On December 6th, 1938, Fidelity instituted an action in the Supreme Court on the bond executed by Parlane Realty Company, Schumann and Albert to recover the deficiency. The defendants in that

action, or some of them, went into Chancery with the present bill to restrain the suit at law. From the decree in Chancery dismissing the bill the administrators of Morris Albert now appeal.

The appellants argue six points on the appeal. First, that Schumann and Albert became liable only as sureties. Second, that the extension of the mortgage by the agreement between Fidelity and the Durrs without the consent of Schumann and Albert discharged the latter of liability upon their bond. Third, that Albert and Schumann did not consent to the last mentioned extension agreement. Fourth, that Albert and Schumann became exonerated of liability to the extent of the value of the mortgaged premises on the due date of their bond by reason of the extension of the mortgage and the depreciation in value of the premises thereafter. Fifth, that Albert and Schumann did not, simply by reason of the manner in which the assets of Parlane were distributed, become liable to the same extent as Parlane was liable (Albert and Schumann apparently were the owners of Parlane and wound up that corporation not according to legal methods but by liquidating and informally dividing the proceeds; which caused Chancery to hold that they, equitably, became responsible for Parlane's debt). Sixth and finally, that the rights of Albert and Schumann are not affected by the issuance of mortgage participation certificates or the assignment of the bonds and mortgage from the Guaranty Company to the respondent, as trustee. We dismiss the fifth and sixth points with the mere mention of them because the matters to which they relate do not affect our disposition of the cause.

Appellants' argument, throughout, assumes that the bond sued upon is a collateral bond. We do not so regard it. In our opinion it is a primary, not a collateral or secondary, obligation; so by its terms, and so by the intent of the parties. It was clearly the consideration upon which the agreement of February 27th, 1928, postponing the due date of the mortgage was executed, and likewise the mortgage extension was the new consideration upon which the bond rests. True, the bond is prefaced by recitals setting forth the execution of the original bond and mortgage, the subsequent devolution of the land

title and the agreement of Fidelity to extend the payment of the mortgage upon the execution of the instant bond; but the last mentioned bond is complete as a primary obligation. Except for the explanatory phrases in the preamble it is in the form usually followed in manifesting a direct and independent obligation. It binds the obligors to Fidelity in the sum of $138,000 conditioned upon the absolute payment of $69,000 on April 1st, 1931, with interest to be computed from January 1st, 1928, at six per centum per annum, payable quarter-annually—and so on with all of the detail of a carefully drawn instrument intended to bind its obligors to the payment of the moneys at the times and in the manner therein stipulated. A significant clause, one word of which we italicize, appended to the "condition" of the bond provides that "all payments of principal or interest made in accordance with the terms of this bond shall *also* be credited as payments made upon the bond and mortgage hereinabove more fully set forth in the preamble," which, as we interpret, means that the payments are to be credited upon this obligation, and, that having been done, that they shall then be credited also as payments upon the earlier instruments. The preamble to the bond leaves no doubt that the payment to which the obligors bind themselves is of the money then due on the original debt, with interest. But the signers undertook, for a fresh consideration, to make payment. Their liability is primary and not secondary. *Gaffney* v. *Wm. E. Wright & Sons Co., 112 N. J. Law 191.* The obligee was under no obligation to sue on the original bond and was not barred by delay in calling for payment. *Pfeiffer* v. *Crossley, 91 N. J. Law 433; affirmed, 92 N. J. Law 638.*

As to the asserted discharge of the liability of Albert by the mortgage extension granted by Fidelity to the Durrs without his consent: We shall assume that the debt sued upon is of such nature that the doctrine of exoneration is applicable. The vice-chancellor found that the obtaining of the extension was the act of Schumann and Albert by their agent and that knowledge and consent was, because of this and of other circumstances, to be imputed to these men. On behalf of the appellants it is vigorously argued that there was no proof of

consent; and one may concede that this is so, without bringing comfort to the appellants' case. Inasmuch as the defense of exoneration is affirmative in character, the burden of proof is upon him who asserts it; and one of the elements of proof with which the appellants were burdened was the lack of knowledge and consent. *Meyer* v. *Blacker, 120 N. J. Eq. 35; Wittson* v. *Englewood Plumbing Supply Co., Inc., 121 N. J. Eq. 323; Aque* v. *Dexheimer, 123 N. J. Eq. 133.* We understand the finding of the learned vice-chancellor to be, in effect, that the appellants did not successfully carry that burden; and our examination of the proofs leads us to sustain that finding. In the absence of the necessary elements of proof the discharge of the obligor will be denied. *De Lotto* v. *Zipper, 116 N. J. Eq. 344.*

We conclude that there was no ground for intervention by equity. The bill in Chancery was properly dismissed.

*For affirmance*—THE CHIEF-JUSTICE, CASE, BODINE, DONGES, HEHER, PERSKIE, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, HAGUE, JJ. 12.

*For reversal*—None.