16 N.J. Super. 15 (1951)
83 A.2d 780
REMIGIO PREZIOSI, PLAINTIFF-APPELLANT,
v.
LENA BUONACCORSI, AS ADMINISTRATRIX OF JOHN BUONACCORSI, DECEASED, AND ALBERT DE CESARE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 8, 1951.
Decided October 19, 1951.
*16 Before Judges McGEEHAN, JAYNE, and WM. J. BRENNAN, JR.
Mr. Harry Chashin argued the cause for appellant (Messrs. Marcus & Levy, attorneys; Mr. Hyman W. Rosenthal, on the brief).
Mr. Dante Rivetti argued the cause for respondent Lena Buonaccorsi, as administratrix, etc.
Mr. George J. Kaplan argued the cause for respondent Albert DeCesare.
The opinion of the court was delivered by JAYNE, J.A.D.
The associated events from which this litigation has developed can be more informatively revealed if stated in a chronological sequence.
*17 On February 25, 1927, John Buonaccorsi, who died during the pendency of this action, and Albert DeCesare executed and delivered to the plaintiff a bond conditioned for the payment of an indebtedness of $2,000 on March 1, 1929, and to secure the payment of the bond they executed and delivered to the plaintiff an accompanying real estate mortgage of even date.
On February 2, 1928, the same parties executed and delivered a bond and mortgage to the Trust Company of New Jersey evidencing a debt of $4,500. The two mortgages encumbered the same premises, but by agreement the plaintiff's mortgage was subordinated to the lien of the mortgage of the Trust Company.
On November 25, 1931, the mortgagors entered into an agreement with the plaintiff extending the time for the payment of the balance of the bond and mortgage debt due to the plaintiff to January 1, 1933.
Thereafter the Trust Company foreclosed its mortgage and in November, 1937, the mortgaged premises were sold by the sheriff and the lien of the plaintiff's mortgage was extinguished.
On February 1, 1950, the plaintiff instituted this action against the defendants to recover the unpaid balance of $1,000 of the original indebtedness with accumulated interest and sought to erect his alleged cause of action upon the terms of the extension agreement as if disassociated from the obligation of the bond. The plaintiff was unsuccessful and judgment was entered in favor of the defendants.
On May 9, 1942, the following statute became effective, L. 1942, c. 172 (R.S. 2:65-7.1):
"Where a bond and a mortgage shall be or have been given for the same debt and the lien of the mortgage has or shall be extinguished by the foreclosure of a prior mortgage, action on the bond shall be commenced within one year from the date of the confirmation of the sale of the mortgaged premises whereby the lien of said mortgage was or shall be extinguished, except in cases in which the lien of the mortgage securing payment of a bond has been so extinguished prior to the taking effect of this act [R.S. Cum. Supp. 2:65-7.1 to *18 2:65-7.3], in which cases action upon said bond shall be commenced within one year after this act [R.S. Cum. Supp. 2:65-7.1 to 2:65-7.3] shall take effect, unless previously barred, and all such actions not commenced within either of said periods, as the case may be, shall be thereafter completely and forever barred for lapse of time, but the time during which any application for surplus moneys arising from the foreclosure of such prior mortgage shall be in litigation, up to the time of the final determination of such litigation, shall not be taken or computed as part of any such period of one year."
The trial judge was of the opinion that the statute clearly encircled the factual circumstances of the present action and constituted a barrier against its prosecution. Our initial inquiry is pursued to ascertain the essence and inner reality of the present action. Is it intrinsically an action on the bond in masquerade dress, or is it based upon an independent primary obligation? Cf. Schumann v. Fidelity Union Trust Co., 127 N.J. Eq. 249 (E. & A. 1940).
The agreement of November 25, 1931, must therefore be attentively scrutinized. We observe that the parties have entitled it "Extension Agreement." A full transcription of it follows with emphasis indicated on those words and phrases to which we ascribe noticeable significance:

"EXTENSION AGREEMENT
"THIS AGREEMENT made this 25th day of November, 1931, between Remigio Preziosi, of the City of Union City, in the County of Hudson and State of New Jersey, party of the first part and John Buonaccorsi and Albert DeCesare, of the City of Union City, in the County of Hudson and State of New Jersey, party of the second part.
Whereas, the party of the first part holds the bond of John Buonaccorsi and Albert DeCesare, bearing date February 25th, 1927, conditioned for the payment of the principal sum of two thousand ($2,000.) dollars on first day of March, 1929, and the interest thereon, together with a mortgage securing payment thereof, made and executed by the said John Buonaccorsi and Albert DeCesare, bearing even date with the bond, and recorded in the office of the Register of the County of Hudson and State of New Jersey, on the twenty-seventh day of February, 1927, in Liber 1430 of Mortgages page 278.
And Whereas the Sum of One Thousand Dollars ($1,000.) has this day been paid on account of the principal of said bond and mortgage, leaving a balance of One Thousand Dollars still unpaid on said principal.
*19 And Whereas the party of the second part have requested that the time of payment of said balance of principal be extended for one year from January 1, 1932;
Now This Agreement Witnesseth that the said party of the first part in consideration of the premises and of one dollar to him in hand paid by the party of the second part, agrees to extend the time of payment of the said balance of the principal sum aforesaid to the first day of January, 1933, Provided that the interest thereon according to the tenor of the said bond or obligation is punctually paid on the first day of December, March, June and September in each year until the said balance of principal sum is fully paid. All terms and conditions of said bond and mortgage to remain in full force and effect, except as the same may be herein modified.
And Provided Further, that nothing herein contained shall in any wise impair the security now held for the said debt. And the said party of the second part agree to the extension of the time of payment of the principal of said bond hereinbefore stated, and for themselves, their executors, administrators and assigns hereby covenant to pay the same on the first day of January, 1933, and to pay the interest thereon on the days on which the same becomes due, as hereinbefore mentioned.
IN WITNESS WHEREOF, the parties hereto have set their hands and seals the 25th day of November, 1931."
It is clearly obvious that the agreement was not intended to supplant the bond. It is manifestly an auxiliary augmentation of the bond merely extending its date of maturity.
In the instant case a bond and a mortgage had been given for the same debt and the lien of the mortgage securing payment of the bond had been extinguished by the foreclosure of a prior mortgage before the effective date of the statute in which situation the statute provides that actions upon the bond "shall be commenced within one year after this act shall take effect, unless previously barred, and all such actions not commenced" within that period "shall be thereafter completely and forever barred for lapse of time * * *."
The form and nature of the action is immaterial if, in reality, it is a proceeding to enforce the obligation of the bond. Cf. Wildwood Title and Trust Co. v. Geisenhoner, 11 N.J. Misc. R. 871, 875 (Cir. Ct. 1933).
We are importuned by counsel for the appellant to liberate this case from the jaws of the statute by the process of statutory construction. It is proposed that a statute of limitation *20 is in derogation of the common law and should therefore be strictly construed.
True, such statutes are the creatures of legislation but the category has existed for a long time. The English statutes of limitations were declared in force in the province of New Jersey in 1728. Allinson's Laws, p. 72. They were reenacted by the State Legislature as early as 1799. Pat. 352. Research will reveal that from the reign of Henry I there has been a procession of such statutes limiting the generous and unspecified latitude of the common law and restricting the time within which actions might be brought to shorter and shorter periods. They have kept in step in the onward and more highly accelerated march of society.
The traditional common law judge experienced a reluctance to observe alterations in laws which had over a span of time become established by precedent and as a consequence the aphorism that statutes in derogation of the common law should be strictly construed percolated into our judicial decisions. Strict and liberal constructions are but two avenues by which to approach and identify the intention of the Legislature. The maxim suggests that the travellers on one avenue should wear different glasses from those worn by the travellers on the other.
Most of our established rules applicable to statutory interpretation and construction are rational and serviceable. Heydon's Case, 3 Coke 7a; 14 Eng. Rul. Cas. 816. Yet it is not easy to comprehend why the modern judge who discerns the object and purpose of a legislative enactment should cramp his construction of it merely because it is a new-fashioned substitute for an out-of-fashion principle of the common law. Pound, Common Law and Legislation (1908) 21 Harv. L. Rev. 383; Stone, The Common Law in the United States (1939) 50 Harv. L. Rev. 4; 3 Sutherland, Statutory Construction (3d ed.), 34, sec. 5502.
Indeed, about one-third of the states have enacted general interpretive legislation abrogating the rule of strict interpretation of statutes in derogation of the common law. 3 Sutherland, *21 Statutory Const., 177, sec. 6205. Our Legislature has frequently embodied in such a statute the express direction that it shall be liberally construed.
While the rule that a statute in derogation of the common law must be strictly construed remains in the bosom of the law, nevertheless it is equally axiomatic that this rule will not be permitted to defeat the obvious purpose of the Legislature or lessen the scope plainly intended to be given the measure. Jamison v. Encarnacion, 281 U.S. 635, 50 S.Ct. 440, 74 L.Ed. 1082 (1930).
It is also the settled rule that where the words of a statute are clear and their meaning and application plain, there is no room for judicial construction. McGowan v. Metropolitan Life Ins. Co., 60 N.J.L. 198 (E. & A. 1897).
The phraseology of the statute under consideration is lucid, explicit, and entirely intelligible. The question addressed to us by the appeal is reduced to whether the statute is applicable to the circumstances of the present case. The solution of that inquiry does not seem to depend so heavily upon the construction of the statute as it does upon a determination of the fundamental nature of the action and its genuine object.
We are persuaded that the obligation which the plaintiff sought to enforce was that of the bond. The debt never lost its original identity. It was that same debt which the defendants covenanted to pay by the terms of the extension agreement. Vide, Knight v. Cape May Sand Co., 83 N.J.L. 597 (E. & A. 1912).
The decisions in such cases as Asbury Park and Ocean Grove Bank v. Giordano, 3 N.J. Misc. R. 555 (Sup. Ct. 1925), affirmed 103 N.J.L. 171 (E. & A. 1926); Alexander v. Manza, 22 N.J. Misc. R. 88 (Cir. Ct. 1944); Reconstruction Finance Corp. v. Haag, 23 N.J. Misc. R. 28 (Cir. Ct. 1944); Chodosh v. Schlesinger, 119 N.J.L. 405 (E. & A. 1938); Gloucester City Trust Co. v. Goodfellow, 124 N.J.L. 118 (E. & A. 1940), have only comparative pertinency to the clearly distinguishable characteristics of the present action.
Judgment affirmed.