DAL ROTH, INC., A CORPORATION OF NEW JERSEY, APPELLANT, v. DIVISION OF ALCOHOLIC BEVERAGE CONTROL, DEPARTMENT OF LAW AND PUBLIC SAFETY OF NEW JERSEY, *ET ALS.*, RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued October 26, 1953—Decided November 6, 1953.

Before Judges CLAPP, GOLDMANN and EWART.

*Mr. Robert H. Wall* argued the cause for appellant Dal Roth, Inc. (*Messrs. Wall & Whipple*, attorneys).

*Mr. Samuel B. Helfand,* Deputy Attorney-General, argued the cause for the Division of Alcoholic Beverage Control (*Mr. Theodore D. Parsons*, Attorney-General, attorney).

*Mr. Charles Hershenstein* argued the cause for the remaining respondents (*Mr. Sidney Simandl*, attorney for respondent Jersey City Liquor Dealers' Association; *Messrs. Halpern & Halpern*, attorneys for respondents Finbar Inc., Gray's Eating Places of New Jersey, Journal Square Bakery, Inc., Ace Shirt Shop Inc., John Maske, John DeDousis, Theodore G. Antos d/b/a/ Theodore The Florist, Mangor Drink

Stores d/b/a/ Gormans and Terminal Cafe; *Mr. Charles Hershenstein*, attorney for respondent Tube Bar Inc.).

The opinion of the court was delivered by

GOLDMANN, J. A. D. This is an appeal from the determination and order of the Division of Alcoholic Beverage Control reversing the action of the Board of Alcoholic Beverage Control of the City of Jersey City in granting appellant Dal Roth, Inc. a transfer of a plenary retail consumption license from person-to-person and place-to-place. The transfer from person-to-person was from Joseph A. Davis, as receiver of Commuters Bar, Inc., to appellant, while the transfer from place-to-place was from 35 Enos Place to store 9-B, Journal Square Station Building, Tube Concourse, both in Jersey City.

The same license, premises and local ordinance, quoted below, were involved in the case of *Tube Bar, Inc. v. Commuters Bar, Inc.*, 18 *N. J. Super.* 351 (*App. Div.* 1952). Commuters Bar, Inc. was in 1951 the licensee for the premises at 35 Enos Place. It leased store 9-B, Tube Concourse, and then applied for a transfer of its license to those premises. There was in effect at the time, and still is, an ordinance limiting the number of plenary retail consumption and plenary distribution licenses to sell alcoholic beverages at retail in the City of Jersey City which, so far as is here pertinent, provides:

"Section 4. From and after the passage of this ordinance, no Plenary Retail Consumption License shall be granted for or transferred to any premises the entrance of which is within the area of a circle having a radius of seven hundred fifty (750) feet and having as its central point the entrance of an existing licensed premises covered by a Plenary Retail Consumption License, provided, however, that if any licensee holding a Plenary Retail Consumption License at the time of the passage of this ordinance shall be compelled to vacate the licensed premises for any reason that in the opinion of the Board of Commissioners of the City of Jersey City was not caused by any action on the part of the licensee, or if the landlord of said licensed premises shall consent to a vacation thereof, said licensee may, in the discretion of the Board of Commissioners of the City of Jersey City, be permitted

to have such license transferred to another premises within a radius of five hundred (500) feet of the licensed premises so vacated. * * *"

The proposed new location for the license at store 9-B was within 750 feet of 12 other licensed premises. It was, however, less than 500 feet from 35 Enos Place. The local board granted the transfer over the opposition of some of the present respondents who contended that the transfer would be in direct violation of the ordinance. On appeal to the Division of Alcoholic Beverage Control, the Division affirmed. The objectors then appealed, and while the matter was pending in the Appellate Division, Commuters Bar, Inc. obligated itself on a lease for store 9-B at a rental of $1,500 a month and expended thousands of dollars for new fixtures and other costs in setting up new quarters. When the Appellate Division, on March 12, 1952, reversed the transfer (18 *N. J. Super.* 351), Commuters Bar, Inc. returned to 35 Enos Place. It took no appeal from that decision. Nor did it surrender, abandon or sublet the store at 9-B, but continued to pay rent.

On April 4, 1952 application was made to the Superior Court, Chancery Division, for an adjudication of insolvency against Commuters and for the appointment of a receiver. *A. A. Pruzick & Co., Inc. v. Commuters Bar, Inc., Docket* *C*–1360–51. While this matter was pending, Commuters applied for a renewal of its plenary retail consumption license for the 1952-53 license period for the premises at 35 Enos Place. On June 27, 1952 the Chancery Division adjudicated Commuters Bar, Inc. insolvent and appointed a receiver. Although Commuters was in the hands of the receiver on July 1, 1952, the local board renewed the license in its name. *Cf. N. J. S. A.* 33 :1–26. The order appointing receiver contained no specific authorization that he continue operating the business. Nonetheless, he continued to conduct the licensed premises at 35 Enos Place. The license was not extended to the receiver until August 27, 1952.

On August 29, 1952 an order was entered in the *Pruzick* case requiring those interested to show cause on September

26 why certain assets of Commuters should not be sold, including the fixtures in both stores and the license. As a result of objections voiced on the return date a new order was made, returnable October 10, 1952, directing that all creditors and other interested persons show cause why the receiver should not at that time and place expose for sale to the highest bidder, in open court, the fixtures, equipment and other tangible assets owned by Commuters in the two stores, as well as his written consent to transfer to the purchaser thereof, and to transfer to the same or other premises, the license in question then effective at 35 Enos Place. When this second order was signed on September 26, the receiver represented to the court that, without paying the rent for 35 Enos Place, he was only "breaking even," and he requested permission to close the business. Such permission was verbally granted. The receiver immediately closed the place.

At the time of the receiver's sale on October 10 it was publicly announced in open court that the prior transfer of the same license from 35 Enos Place to store 9-B had been set aside by the Appellate Division in the *Tube Bar* case, above. The court then announced that the receiver's consent to the transfer of the license was being sold "subject to law" and also "subject to any rights that flow from it [the Appellate Division opinion]." The sale then proceeded and one Andrew Rothrock acquired the tangible assets at store 9-B, together with the consent of the receiver to the transfer of the license, on a bid of $26,000. The sale was confirmed by the Chancery Division on October 15, 1952. Thereafter, on October 27, 1952, Andrew Rothrock made written assignment of his bid to Dal Roth, Inc. which had been incorporated only two days before.

After receiving the $26,000 payment the receiver, on October 28, wrote the landlord of 35 Enos Place "disaffirming" Commuters' lease there, effective October 29, 1952. On October 29 Dal Roth, Inc. filed application for a person-to-person and place-to-place transfer with the Board of Alcoholic Beverage Control of the City of Jersey City. The board

conducted a hearing at which respondents appeared and objected. It granted the transfer by a two-to-one vote on November 19, 1952. Thereafter, on November 26, 1952 the receiver "disaffirmed" the lease of Commuters Bar, Inc. at the 9-B premises.

The respondent-objectors took an appeal to the Director of the Division of Alcoholic Beverage Control which resulted in a reversal of the local board's action. At the hearing before the Director it was stipulated that the lease for the premises occupied by Commuters at 35 Enos Place would by its terms expire on August 31, 1953 and, further, that neither Dal Roth, Inc. nor Andrew Rothrock ever became tenants or entered into possession of the licensed premises at 35 Enos Place. Dal Roth, Inc. appeals the order of the Director reversing the person-to-person and place-to-place transfer granted by the Jersey City board and directing that all activity under the license for the 9-B premises cease forthwith.

Appellant contends that section 4 of the Jersey City ordinance, properly interpreted, contains no provision that application for a place-to-place transfer of a license must be made by an existing licensee, and that if section 4 is construed to include such a requirement, then the provision in that regard is unreasonable and unenforceable.

The Alcoholic Beverage Act expressly authorizes the governing board of a municipality to limit, by ordinance, the number of licenses to sell alcoholic beverages at retail in the community. *R. S.* 33:1–40. Pursuant to such legislative authority the governing body of Jersey City adopted the ordinance from which we have quoted section 4, requiring a minimum separating distance of 750 feet between licensed premises. Such a regulation must result in a limitation in the number of licenses, for the greater the intervening distance that must separate licensed premises, the fewer the number that may exist within the municipal boundaries.

The general welfare considerations prompting the enactment did not, however, dim the governing board's perception that a flat distance restriction, without more, might lead to

harsh consequences in some cases. For example, the difficulty of obtaining suitable locations beyond the proscribed distance would leave licensees at the mercy of unscrupulous landlords demanding exorbitant rent increases at the expiration of an existing lease. In an attempt to alleviate such situations, with fairness to licensees on the one hand and consistent with public welfare considerations on the other, the governing board in its discretion provided that, irrespective of the 750-foot restriction, a licensee "compelled to vacate the licensed premises for any reason * * * not caused by any action on the part of the licensee" may be permitted to transfer his license to other premises within 500 feet of the vacated premises.

 The clear and unequivocal language of the proviso in section 4 of the ordinance permits of no other construction than that the benefit of the exception is limited to those licensees who, through no fault of their own, find themselves in the predicament of being deprived of their licenses if the 750-foot provision were mandatorily to be controlling in all place-to-place transfers. The proviso speaks of "licensee" throughout. Dal Roth, Inc. was not a licensee which had been compelled to vacate premises. It was a mere applicant for a license, hoping to take advantage of the fact that the former licensee had gone out of business, and it had no premises to vacate, it being stipulated that it had never become a tenant or entered into possession of the premises at 35 Enos Place.

 The judicial goal in the construction of ordinances is the discovery and effectuation of the local legislative intent, and in general this inquiry is governed by the same rules as apply to the interpretation of statutes. *Wright v. Vogt,* 7 *N. J.* 1, 5 (1951). The ordinance was correctly interpreted by the Director of the Division of Alcoholic Beverage Control. The Jersey City board misapplied the provisions of section 4 of the ordinance in granting the transfer in question. As was said in *Tube Bar, Inc. v. Commuters Bar, Inc.,* 18 *N. J. Super.* 351, 354 (*App. Div.* 1952) :

"When a commission, board, body or person is authorized by ordinance, passed under a delegation of legislative authority, to grant or deny a license or permit, the grant or denial thereof must be in conformity with the terms of the ordinance authorizing such grant or denial. 9 *McQuillin, Municipal Corporations* (3d ed. 1950), § 26.73; *Bohan v. Weehawken* [*Tp.*], 65 *N. J. L.* 490, 493 (*Sup. Ct.* 1900). Nor can such commission, board, body or person set aside, disregard or suspend the terms of the ordinance, except in some manner prescribed by law. *Public Service Ry. Co. v. Hackensack Imp. Com.*, 6 *N. J. Misc.* 15 (*Sup. Ct.* 1927); 62 *C. J. S., Mun. Corp.*, § 439. * * *"

The only other question we need decide is whether the ordinance is arbitrary and invalid because it limited relief to licensees actually having premises which they were forced to vacate. The presumption is that an ordinance is reasonable, and the burden of clearly establishing that it is not falls upon the one attacking the ordinance. *State v. Mundet Cork Corp.*, 8 *N. J.* 359, 370 (1952); *Kirsch Holding Co. v. Borough of Manasquan*, 24 *N. J. Super.* 91, 97 (*App. Div.* 1952).

The public policy behind *R. S.* 33:1–40, which permits a governing body by ordinance to limit the number of retail liquor outlets in a community, supports an ordinance which would allow only one license within a certain area. The Jersey City ordinance, as has already been pointed out, includes an escape clause available in hardship cases where a licensee is compelled to vacate his premises. The municipality was under no legal compulsion to include any such alleviating proviso in its ordinance. It might properly, in the exercise of a sound discretion, have refrained from making any exception to the general distance restriction. Fairness to licensees dictated the inclusion of the proviso.

There seems to be no reason why, on the basis of public policy, we should say that the escape clause should not be limited to those licensees who themselves are forced to vacate. There is no compelling consideration for giving licensees so circumstanced the right to transfer the license to someone else who could then locate within the 500-foot radius area of the vacated licensed premises. It seems entirely reasonable to keep the door of the escape clause as nearly shut as

possible. If the licensee is forced to vacate, the policy behind the ordinance and the law pursuant to which it was adopted will be relaxed to take care of his hardship, but if he is forced not only to vacate but also to sell, no aid can be extended to him. This is not so arbitrary a matter as to require us to hold the ordinance unreasonable and therefore void; the law does not have to undertake to provide for his license. Restrictive liquor regulations may, and ofttimes do, result in individual hardships. However, where larger social interests justify a restrictive policy, private individual interests must give way.

When appellant took over Rothrock's bid it could have pursued other alternatives than to seek a person-to-person and place-to-place transfer of the license to store 9-B. It could have sought a transfer to some place in Jersey City more than 750 feet distant from any existing license, as permitted by the ordinance. It could also have elected to open for business at 35 Enos Place; the receiver had "disaffirmed" the Commuters Bar, Inc. lease for those premises on October 29, 1952, and appellant could have established itself in a location which for more than 14 years had supported a profitable enterprise. Instead, it sought to open for business in a location already serviced by a dozen retail liquor outlets within a radius of 750 feet.

In view of our determination that the Director correctly interpreted section 4 of the ordinance, and that the ordinance is reasonable and valid, we need not decide whether the issues raised on the present appeal are *res judicata* by virtue of the decision in *Tube Bar, Inc. v. Commuters Bar, Inc.*, 18 *N. J. Super.* 351 (*App. Div.* 1952), or whether the municipality had proper notice under *R. R.* 4:37–2 (formerly *Rule* 3:24–2), or whether the ordinance is void in that it limits the escape clause to those who held a license at the time of its passage in 1937 or at least at the time of its amendment in 1941.

Affirmed.