33 N.J. Super. 378 (1954)
110 A.2d 313
NESTORE PETRANGELI, APPELLANT-RESPONDENT,
v.
JOSEPH BARRETT, TRADING AS DELAVUE GRILL, PHYLLIS K. SCIAROTTA, TRADING AS CLUB 88, AND THE TOWNSHIP COMMITTEE OF THE TOWNSHIP OF EWING, MERCER COUNTY, NEW JERSEY, RESPONDENT-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued November 22, 1954.
Decided December 17, 1954.
*380 Before Judges GOLDMANN, FREUND and SCHETTINO.
Mr. Samuel Leventhal argued the cause for respondent-appellants (Mr. William Abbotts and Mr. Samuel Leventhal, attorneys; Mr. John Abbotts, on the brief).
Mr. George Pellettieri argued the cause for appellant-respondent.
*381 Mr. Samuel B. Helfand, Deputy Attorney-General, argued the cause for State of New Jersey, Division of Alcoholic Beverage Control (Mr. Grover C. Richman, Jr., Attorney-General, attorney).
The opinion of the court was delivered by SCHETTINO, J.S.C. (temporarily assigned).
Appeal is taken from an order of the Division of Alcoholic Beverage Control reversing the action of the Township Committee of Ewing Township in granting appellants, Joseph Barrett and Phyllis Sciarrotta, reciprocal transfers of plenary retail consumption licenses from person-to-person and place-to-place.
From Sciarrotta and her premises at 200 Ewingville Road to Barrett and his premises on River Road there was transferred a plenary retail consumption license with broad package privileges. At the same time from Barrett and his premises to Sciarrotta and her premises, there was transferred a plenary retail consumption license without broad package privileges. Under the license transferred, Barrett intends to sell alcoholic beverages for off-premise consumption from a liquor store instead of from his public barroom to which such sales were restricted under his original license. N.J.S.A. 33:1-12.23. Also located on River Road are the premises of Nestore Petrangeli and Jules Gasparri, holders of plenary retail consumption licenses. The premises of Barrett, Petrangeli, and Gasparri lie within a distance of 1,000 feet total.
When the applications for transfers were filed with the township committee, Petrangeli filed an objection on the ground that the proposed transfer would be in direct violation of the provisions of an existing ordinance of the Township of Ewing forbidding transfers of such licenses to premises within 1,000 feet of existing licensed premises, and that such transfer would cover a portion of Barrett's premises not previously licensed. The ordinance, so far as is here pertinent, provides:
"1. No plenary retail consumption license or plenary retail distribution license shall be issued for or transferred to premises within *382 one thousand (1,000) feet of any other premises licensed under a plenary retail consumption or plenary retail distribution license; provided, however, that nothing in this ordinance shall prevent renewal, for the premises now licensed or person-to-person transfer of licenses existing at the time of the effective date of this ordinance; provided further, that nothing in this ordinance shall prevent the transfer of any such licensed premises or structure which may be taken for public use or destroyed to a location within one thousand (1,000) feet of its present location provided that such new location is not prohibited by any statute of the State of New Jersey or other ordinance or regulation of the Township of Ewing."
A hearing was held on the application by the township committee on December 11, 1953, at which time the applicants  appellants, Barrett and Sciarrotta  and Petrangeli appeared. At the conclusion of the hearing the township committee granted the applications for transfer. The mayor stated the reasons for the township committee's action as follows:
"The purpose or the intent of the Township Committee in the passage of the ordinance was to eliminate the ganging up of taverns. The feeling being it would prevent the extraordinary police problems which seem to arrive when liquor establishments are concentrated in a small area. It was not the intention of the Township Committee to prevent this sort of transfer or exchange. Both licenses have the same privileges of selling package goods for off premises consumption.
We consider this to be nothing more than an application for the exchange of an existing premises, a privilege which has been and may be granted to licenses. We do not believe the general welfare of the community will be adversely affected by the granting of this application."
The ordinance provides escape clauses for certain hardship cases, but they are not pertinent here, and it is not contended that the transfers in question come within these provisos.
On December 14, 1953 Petrangeli appealed the action of the township committee to the Director of the Division of Alcoholic Beverage Control. Hearing was held, and on March 11, 1954 the Director filed his conclusions and order reversing the action of the township committee. On March 12, 1954 appellants filed an appeal with this court. Shortly thereafter our Supreme Court handed down the decision of *383 Mazza v. Cavicchia, 15 N.J. 498 (1954). By reason thereof, this court remanded the matter to the Division of Alcoholic Beverage Control for the purpose of allowing the parties in interest to examine and make objections to, if any, and for argument concerning the hearer's report in accordance with the Mazza case opinion. Further proceedings were then had, with the result that the Director affirmed his prior conclusions and order reversing the township action.
Appellants argue that the purpose of enacting the ordinance was the protection of public welfare. This contention is based on the statement of the mayor that the ordinance was passed to prevent the ganging up of liquor establishments and to keep them spaced apart in order to expedite policing practices. It is not doubted that considerations of general welfare prompted the legislation, but N.J.S.A. 33:1-40 is the apparent legislative authority here. Aside from the weight to be accorded the mayor's statement, which will be discussed at a later point, the language of the ordinance is unambiguous and its purpose seems to be to limit the number of licensed premises, not merely to spread them out.
Originally N.J.S.A. 33:1-12(1) allowed holders of plenary retail consumption licenses broad package privileges. Package goods could be sold from portions of the licensed premises other than the public barroom and from a separate liquor store with or without a bar. South Jersey Retail Liquor Dealers Association v. Burnett, 125 N.J.L. 105 (Sup. Ct. 1940). Subsequent legislation changed this. Effective May 28, 1948, L. 1948, c. 98, p. 552, sec. 1 (N.J.S.A. 33:1-12.23) restricts such licensees to the sale of package goods in the public barroom only, except in those places where, prior thereto, package goods were sold in another portion of the licensed premises. A license with a broad package provision is distinct from one without such privilege and grants the holder thereof more extensive rights. Since the Alcoholic Beverage Law does not provide for the exchange of existing licenses, both applications here must be considered as applications for transfers within the provisions of N.J.S.A. 33:1-26.
*384 The right of the Legislature or of municipalities or of other authority under legislative power given to regulate the sale of intoxicating liquors at retail is within the police power of the State. Meehan v. Board of Excise Commissioners of Jersey City, 73 N.J.L. 382 (Sup. Ct. 1906), affirmed 75 N.J.L. 557 (E. & A. 1908). The legislative authority for the enactment of the ordinance here involved is N.J.S.A. 33:1-40, which expressly authorizes municipalities to limit by ordinance the number of licenses to sell alcoholic beverages at retail in the community. When a governing body adopts an ordinance which specifies the minimum space between licensed premises, its result is to limit the number of licenses, since the greater the intervening distance that must separate one licensed premises from another, the fewer the number of licenses that may exist within the municipality. Dal Roth, Inc., v. Division of Alcoholic Beverage Control, 28 N.J. Super. 246 (App. Div. 1953).
Under N.J.S.A. 33:1-19 the governing body here is given the jurisdiction to administer the issuance of retail liquor licenses. N.J.S.A. 33:1-26 authorizes the municipal governing body to transfer licenses from one person or premises to another, but its action in refusing to grant or granting any application for transfer is subject to review by the Director. Tube Bar, Inc., v. Commuters Bar, Inc., 18 N.J. Super. 351 (App. Div. 1952). A municipality has wide discretion in the issuance and transfer of liquor licenses, Passarella v. Board of Commissioners of Atlantic City, 1 N.J. Super. 313 (App. Div. 1949), but such authority is not unrestricted.
It has long been established that a local governing body has no jurisdiction to grant or transfer a license in violation of the terms of a local ordinance. Bachman v. Inhabitants of Town of Phillipsburg, 68 N.J.L. 552 (Sup. Ct. 1902). The rule is aptly stated in Tube Bar, Inc., v. Commuters Bar, Inc., supra (18 N.J. Super. at page 354):
"When a commission, board, body or person is authorized by ordinance, passed under a delegation of legislative authority, to grant *385 or deny a license or permit, the grant or denial thereof must be in conformity with the terms of the ordinance authorizing such grant or denial. 9 McQuillin, Municipal Corporations (3d ed. 1950), § 26.73; Bohan v. Weehawken Tp., 65 N.J.L. 490, 493 (Sup. Ct. 1900). Nor can such commission, board, body or person set aside, disregard or suspend the terms of the ordinance, except in some manner prescribed by law. Public Service Ry. Co. v. Hackensack Imp. Comm., 6 N.J. Misc. 15 (Sup. Ct. 1927); 62 C.J.S., Municipal Corporations § 439."
As in the case of statutes, the guide in construing an ordinance is to learn and give effect to the legislative intention. Wright v. Vogt, 7 N.J. 1, 5 (1951). Ordinances are to receive a reasonable construction, and primarily the intention expressed in an ordinance is to be gleaned from the language employed. Where the language is unambiguous and clearly expresses the intent of the legislative body, there is no room for judicial construction. The rule is well settled and axiomatic. Preziosi v. Buonaccorsi, 16 N.J. Super. 15, 21 (App. Div. 1951).
The clear and unequivocal language of the present ordinance permits of only one meaning  that no plenary retail consumption license can be transferred to premises within 1,000 feet of any other premises licensed as specified. The ordinance expressly prohibited the transfers attempted to be effected here. Where there is no ambiguity, we cannot impress the rule of construction.
Appellants claim the Director improperly construed the ordinance by not giving weight to the views expressed by the mayor on behalf of the township committee. The mayor stated that it was not the intention of the governing body "to prevent this sort of transfer or exchange." This they considered "to be nothing more than an application for the exchange of an existing premises."
The exposition of the mayor cannot be accorded any weight. First, the wording of the ordinance is plain, simple, clear and unambiguous, and this court is not free to indulge in a presumption, arising from a subsequent extrinsic exposition, that the local governing body intended something other than what was expressed. Bass v. Allen Home Improvement *386 Co., 8 N.J. 219, 226 (1951). The language must be given its ordinary meaning. Secondly, the mayor's interpretation is not the "contemporary exposition" referred to in Offhouse v. State Board of Education, 131 N.J.L. 391, 395 (Sup. Ct. 1944), and relied upon by appellants. Aside from the fact that an exposition is considered only where the language of the municipal regulation is ambiguous, we emphasize it must be contemporaneous. Contemporaneous meaning of an ordinance is that which it possesses when enacted. 6 McQuillin, Municipal Corporations (3d ed. 1949), § 20.45, p. 107. What basis is there for the mayor's statement? We are shown none  it might well be a mere opinion upon later reflection. As the court stated in Keyport and Middletown Point Steamboat Co. v. Farmers Transportation Company of Keyport, 18 N.J. Eq. 13, 24 (Ch. 1866), affirmed 18 N.J. Eq. 511 (E. & A. 1866):
"If the legislator who enacted the law should afterwards be the judge who expounds it, his own intention, which he had not skill to express, ought not to govern."
Our courts will interpret and enforce the legislative will as written and not according to some supposed unexpressed intention. City of Camden v. Local Government Board, 127 N.J.L. 175, 178 (Sup. Ct. 1941).
Appellants see in the Director's action here a substitution of his will for that of the local governing body. Is that the issue present? We think not. Rather, the question is whether the governing body had authority to grant the transfers in question. As previously pointed out, a municipality may not disregard its own ordinance and, if it does, the Director must reverse such violative action. Tube Bar, Inc., v. Commuters Bar, Inc., supra; Dal Roth, Inc., v. Division of Alcoholic Beverage Control, supra. It matters not that the objector, Petrangeli, may obtain, incidentally, a pecuniary advantage by the prohibition of the transfers. Hudson Bergen County Retail Liquors Store Ass'n v. Board of Com'rs of City of Hoboken, 135 N.J.L. 502, 510 (E. & A. 1947).
*387 The Director correctly interpreted the ordinance, and the township committee acted in violation of it. The order of the Director is affirmed.