60 N.J. Super. 491 (1960)
159 A.2d 417
LOVELADIES PROPERTY OWNERS ASSOCIATION, INC., ET ALS., PLAINTIFFS-APPELLANTS,
v.
BARNEGAT CITY SERVICE CO., INC., ET ALS., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 22, 1960.
Decided March 31, 1960.
*493 Before Judges GOLDMANN, CONFORD and FREUND.
Mr. James M. Davis, Jr., argued the cause for plaintiffs-appellants (Messrs. Powell and Davis, attorneys).
Mr. James L. Wilson argued the cause for respondent Carl A. Sutter, Building Inspector of Long Beach Township (Messrs. Berry, Whitson and Berry, attorneys).
Mr. Norman J. Abrams argued the cause for respondents Ernest Spisso, Joseph L. Spisso and Seamen's Landing (Messrs. Abrams and Kestenbaum, attorneys).
*494 Mr. Vincent A. Grasso argued the cause for respondents Wesley A. Roche, Wallace C. France, Max Weiner, Besse Weiner and American Seashore Homes, Inc. (Messrs. Hiering and Grasso, attorneys).
The opinion of the court was delivered by CONFORD, J.A.D.
Plaintiffs, owners of property in the Loveladies section of Long Beach Township in Ocean County and the non-profit landowner's association to which they belong, appeal from a summary judgment entered in favor of defendants, three groups of land developers, whom they sought to enjoin from proceeding to develop for residential purposes certain portions of the Loveladies area in accordance with their filed subdivision plans. These plans had been previously approved by the governing body of the municipality and duly filed in the office of the county clerk. Plaintiffs also sought to enjoin the building inspector of the township from issuing building permits for the lots delineated in the filed subdivision plats.
Plaintiffs' objection to the subdivision plats is that the lots therein laid out do not meet the minimum area requirements for Loveladies as set forth in the township zoning ordinance, amended in its pertinent particulars prior to the submission of any of the plats in question. Their position is that in computing the area of the lots certain private easements of access, hereinafter described, were erroneously included. It is clear that almost all of the lots delineated on the subdivision plats can meet the minimum area requirements only if these easement strips are included in calculating their size. The trial court granted defendants' motion for summary judgment on the ground that in the light of the ambiguity of the minimum area provisions the contemporaneous construction of the ordinance by the municipal authorities charged with its enforcement determined the meaning to be given to the provisions, and that construction indicated that inclusion of the easements was proper.
*495 The plan of the developers here objected to is best understood in the context of the geographical setting of the community. Long Beach Township is located on Long Beach Island, which lies off the mainland of Ocean County. Eighteen miles long, and varying in width from a few hundred feet to half a mile, it is bounded by the Atlantic Ocean on the east, Barnegat Bay and Little Egg Harbor on the west, Barnegat Inlet on the north and Beach Haven Inlet on the south. Long Beach Township occupies all of the island except for six noncontiguous areas running the width of the island which constitute separate municipalities. Generally bisecting the island lengthwise, and running in a north-south direction, is Long Beach Boulevard. The Loveladies section of the township is its most northerly, lying just south of the Borough of Barnegat Light. Until recently it was very sparsely populated. See Jones v. Zoning Board of Adjustment, Long Beach Tp., 32 N.J. Super. 397, 401 (App. Div. 1954). When originally subdivided it was laid out in lots 125 feet wide, which fronted on Long Beach Boulevard and extended all the way to the bay on the west or to the ocean on the east. Plaintiffs Antal, Price and Weintraub are each owners of an original, ocean-side lot, and plaintiffs Fleming own a bay-side lot. All have built expensive and commodious homes on their lots in accord with what appears to be the present general character of Loveladies as a desirable and high-quality residential section.
The subdivisions here in question involve nine of the original 125-foot lots: six contiguous lots on the bay side and one on the ocean side owned by defendants Roche and Frank, successors in interest to Barnegat City Service Co., Inc., which originally prepared, obtained approval of and filed the subdivision plat in 1955 designating the development as Long Beach Club Estates; and two owned by defendants Spisso, one on the bay side and one on the ocean side, directly opposite each other, that on the bay side contiguous to the most northerly lot in Long Beach Club Estates.
*496 
*497 The subdivision pattern for the bay side of Long Beach Club Estates illustrates the dispute involved in this litigation. Treatment therein of lots and easement strips is typical of the subdivision plans of all the defendant developers as well as those already executed in other sections of the township, especially North Beach. As is made clear from the portion of the subdivision plat herein reproduced, the six original lots in Long Beach Club Estates are subdivided into five tiers of twelve building lots each, whose frontages run perpendicular to Long Beach Boulevard. Each tier except one backs on an artificial lagoon. In lieu of streets affording access into the development, the developers have provided private easements by marking off within the lot boundaries 20-foot strips running the length of each tier perpendicular to the boulevard, so that in the case of the two double tiers the private way is 40 feet wide. Each of the three private ways is given a street name on the filed plat. The only variation in the other subdivision plats is the absence of lagoons and street names for the private ways. These differences will be seen not to be significant in terms of the issue in this case.
The ordinance requires that lots in the Loveladies section be at least 75 feet by 100 feet and have a minimum of 10,000 square feet. As the plat indicates, each of the lots meets the frontage requirement; moreover, regardless of the exclusion of the easement strips, they all conform to the depth requirement. But if the easement strips are excluded in the area calculation all but 10 of the 68 lots in Long Beach Club Estates and all but one of the 13 Spisso lots fall short of the minimum area requirement.
The determination of whether these easement strips may be included in the area calculations depends upon the proper construction to be given to the directly pertinent provisions of the zoning ordinance, read in the context of the entire ordinance, their evident purpose and policy, and recognized principles of zoning in general. See San-Lan Builders, Inc. *498 v. Baxendale, 28 N.J. 148, 155 (1958); Wright v. Vogt, 7 N.J. 1, 5-6 (1951). The ordinance defines "lot" as:
"A parcel of land on which a main building and its accessory buildings are or may be placed, together with the required open spaces, the location, dimensions and boundaries of which are shown on the records of Ocean County." (Emphasis added.)
The question, then, is whether a proper construction of this definition would permit these easement strips to be included within the meaning of the term "lot," for purposes of the minimum area requirement. We have concluded in the negative.
First, it is clear that the strips are not land on which buildings "may be placed." There can be little doubt that these private ways, indicated as they are on the filed plat, constitute perpetual easements of access appurtenant to each of the lots in the tier serviced thereby, and that while they can be extinguished through the consent of all the property owners (an unlikely eventuality in view of the fact that there is no other possible means of access to the interior lots except for the two lagoons), no single property owner would have the right unilaterally to interfere with the free passage thereon by all the other property owners, their guests, and other licensees. See Allen v. Stevens, 29 N.J.L. 509, 510-511 (E. & A. 1861); Booraem v. North Hudson County R.R. Co., 40 N.J. Eq. 557, 564 (E. & A. 1885); Dill v. Board of Education of City of Camden, 47 N.J. Eq. 421, 432-433 (Ch. 1890); Brindley v. Borough of Lavallette, 33 N.J. Super. 344, 360 (Law Div. 1954). See also Larkin v. Kieselmann, 259 S.W.2d 785 (Mo. Sup. Ct. 1953); Fiebelkorn v. Rogacki, 280 App. Div. 20, 111 N.Y.S.2d 898 (1952), affirmed 305 N.Y. 725, 112 N.E.2d 846 (Ct. App. 1953).
Furthermore, these private ways cannot, as is argued by defendants, be considered as part of "the required open spaces" included in the definition of "lot." Those open spaces plainly mean the front, rear and side yards, these *499 being the only open spaces required by the ordinance. Those yards are expressly defined in the ordinance as "open, unobstructed space[s]." The functional and aesthetic differences between a yard which is reserved for the private use of the individual property owner and a way in front of his home over which there is or may be at any time passage of pedestrians and vehicles unrelated to his private use are obvious. The justification for yard requirements in a zoning ordinance is that they implement the valid zoning purposes of controlling population density and the overcrowding of land and buildings and promoting the general welfare (purposes expressed in the statute, R.S. 40:55-32, and in the ordinance in question) by providing "sufficient open space around buildings for rest and recreation," San-Lan Builders, Inc. v. Baxendale, supra (28 N.J., at page 158), as well as access for fire-fighting and other municipal or utility services. Moreover, minimum lot area requirements, as such, serve not only the utilitarian zoning purposes mentioned but that of enhancement of the appearance of the general neighborhood affected, see Clary v. Borough of Eatontown, 41 N.J. Super. 47, 67 (App. Div. 1956); and consequently conservation of the character and value of property therein generally. See also Lionshead Lake, Inc. v. Township of Wayne, 10 N.J. 165, 174, 177 (1952); Pierro v. Baxendale, 20 N.J. 17, 28 (1955). Thus, not only do these easement ways or roads fail technically to come within the ordinary meaning of the phrase, "required open spaces," but inclusion of them within the required minimum lot area would be antithetical to the rationale justifying the requirement of open lot spaces in zoning regulations and runs counter to the general zoning philosophy supporting minimum lot area requirements.
If these access strips had been dedicated by the developers as public streets instead of being reserved as private easements, and it appears (from information furnished the court at its request after the argument) that they were not so dedicated, for the reason, partly, that they failed to meet *500 the minimum width requirement for public streets established by the township, no colorable claim for their inclusion in the required lot area would be maintainable, and this despite the fact that title in fee to the strip may rest in the abutting property owners. See Clarks Lane Garden Apartments v. Schloss, 197 Md. 457, 79 A.2d 538 (Ct. App. 1951). In the leading case of Montgomery v. Hines, 134 Ind. 221, 33 N.E. 1100 (Sup. Ct. 1893) (dealing with construction of a deed rather than a zoning problem), the court voiced the self-evident proposition that: "`[l]ot' and `street' are two separate and distinct terms, and have separate and distinct meanings. The term `lots,' in its common and ordinary meaning, includes that portion of the platted territory measured and set apart for individual and private use and occupancy; while the term `streets' means that portion set apart and designated for the use of the public * * *." 33 N.E., at page 1101. Thus the determination, in terms of relevance to the present inquiry, of which area is a lot and which a street, these areas being mutually exclusive, depends not on the way title is held, or platted areas apparently bounded on a filed map, but rather on the function which each separate area is to serve as observable by inspection of the plat. Pertinently to the present defendants' argument that plat boundary lines control its areas, the Indiana court observed:
"The plat of the addition designated the lots and streets, stating the size of the lots and the width of the streets. In giving the size of the lots it did not deduct and give the size of the lots exclusive of the streets, but designated the width of the streets, and the size of the lots, measuring from the center of the street. This method of designating the size of the lots did not make the lot, or any portion of it, a street, nor any portion of the street a lot. The streets were named and their width designated on the plat, and purchasers bought with knowledge of these facts as to what portion of the territory platted was platted as streets, and what portion as lots." Id., 33 N.E., at page 1100.
See also Weggee v. Madler, 129 Wis. 412, 109 N.W. 223, 227 (Sup. Ct. 1906); Peake v. Azusa Valley Sav. Bank, 37 Cal. *501 App.2d 296, 99 P.2d 382, 384 (Dist. Ct. App. 1940); Annotation, 6 A.L.R. 1166 (1920). Furthermore, as bearing upon the soundness of choosing the functional rather than the title test in determining from a plat what is a street and what a lot, the California court, resolving the meaning of the term "adjacent lots," held that:
"However clearly it may appear that the owner of a lot holds title to the center of an adjoining street, subject to the public easement, and that the boundary of the lot is technically, therefore, the center of the street, in view of the fact that the owner of such lot or land has no right to the possession or occupancy of any portion of such public street, we are of the opinion that the word `lot' as generally and customarily used does not include such portion of the street." Earl v. Dutour, 181 Cal. 58, 183 P. 438, 6 A.L.R. 1163 (Sup. Ct. 1919).
While defendants concede that if these were public streets they could not properly be included in the lot area calculations, they argue that the private character of the easements compels a contrary conclusion. But we entertain the view that for present purposes the basic difference between lots and public streets should be deemed applicable as well to private streets. While there may be a significant theoretical distinction between public and private streets in relation to who may make use thereof, as a practical matter this is of little consequence here. Since these private roads are all dead-end, even were they dedicated to the public and accepted by the township their use would still in all probability be largely confined to the abutting property owners and their licensees. And as regards the property owners, inter se, the easements have all the functional attributes of public streets, see Dill v. Board of Education of City of Camden, supra (47 N.J. Eq., at page 433), and no private use thereof in derogation of those functional attributes may be made by an individual property owner.
Furthermore, while there is some authority to the contrary, see, e.g., Siegemund v. Building Com'r. of City of Boston, 259 Mass. 329, 156 N.E. 852 (Sup. Jud. Ct. *502 1927), the undifferentiated term "streets," in a planning and zoning sense, is in this jurisdiction generally accorded a scope extending to all access ways in common, albeit not public, use, and it is used in contradistinction to the term "lot," which denotes strictly individual and private use. See, e.g., Wynn v. City of Margate City, 9 N.J. Misc. 1324, 1325 (Sup. Ct. 1931), dealing with a zoning ordinance defining "street" as "any road, avenue, street, lane, or other way set aside for common street purposes or used for access to more than one lot." Similarly, the Official Map and Building Permit Act of 1953, N.J.S.A. 40:55-1.29 et seq., requiring street access as a precondition for the issuance of a building permit, N.J.S.A. 40:55-1.39, defines "street" as any "street, avenue, boulevard, road, lane, parkway, viaduct, alley, or other way," which is indicated on a filed plat, N.J.S.A. 40:55-1.31. That definition is seen to include all manner of private ways. Just as these private easements would satisfy the "access to a street" requirement of N.J.S.A. 40:55-1.39, were that act operative in this municipality, so, obviously, was the purpose of the developers in laying out these easements that of meeting the functional need represented by that requirement, whether or not it was legally incumbent upon them so to do. (We are told the township has not adopted the provisions of the 1953 act.) Not only would owners and guests use them, but also such licensees as business visitors, police, fire and utility vehicles, and ambulances.
Finally, the township zoning ordinance itself reflects accord with this broad concept of the term "streets." Although it fails to define that term, it does define the term "street line" as "the boundary line of any public or private street shown on the official map of the Township of Long Beach, or upon any map of a land subdivision" (emphasis added). That the ordinance contemplates, moreover, mutual exclusion between lot areas and street areas is indicated by its definition of "corner lot" as "a lot fronting on two streets at their intersection." It need hardly be pointed out that a *503 lot cannot both front on a street and include within its boundaries, in a practical rather than technical sense, a portion of that street.
The reported adjudications of similar problems in other jurisdictions are not particularly helpful since they generally rest on specific ordinance provisions allowing inclusion of private ways in specified minimum lot areas; see, e.g., Roncka v. Fogarty, 152 Neb. 467, 41 N.W.2d 745, 749 (Sup. Ct. 1950). Weissmantel v. Village of Sands Point, 129 N.Y.S.2d 640 (Sup. Ct. 1954), relied upon by defendants for the inclusion of easements in lot area calculations, is distinguishable, first, because the nature of the easement there involved and its functional analogy to a public street do not appear, and, second, because the essential issue in that case was the retroactive effect of an ordinance amendment which made an apparent change in plaintiff's right to a building permit applied for before the amendment. The case most closely in point, Sommers v. Mayor and City Council of Baltimore, 215 Md. 1, 135 A.2d 625 (Ct. App. 1957), dealing with the inclusion in lot area calculation of a private rear alley commonly used, and construing a definition of lot substantially similar to the one here, is in accord with our view that in the zoning sense, unless otherwise specifically provided, the meaning of the word "lot" requires, in order to preserve the integrity and purpose of the zoning scheme, the exclusion of access easements, whether public or private.
We hold, therefore, that the clear meaning of the disputed provision of the ordinance, as gathered from the ordinary signification of the operative terms it employs, in the light of its purposes and objects and those of zoning in general, as well as of all the related provisions of the ordinance, precludes the inclusion of the easement strips in the calculation of lot size. Of course, particular minimum lot specifications are matters of local policy and no concern of the court so long as reasonable, and if the governing body is dissatisfied with our construction of the ordinance it is *504 free to alter it to express the precise regulations it desires to have in effect.
Defendants argue that the approval by the governing body of these plats and similar ones for the North Beach section and the issuance by the building inspector of building permits for those lots demonstrate the real meaning of the ordinance provision, and that the thus disclosed intent should be accepted by this court. It may be noted, parenthetically, that there appears from the record some question as to whether that construction was concurred in by the township attorney and the board of adjustment. But in any event, while the contemporaneous construction of statutes and ordinances by the enforcing authority may be persuasive where substantial doubts as to meaning are apparent on the face of legislation, it has no relevance, nor is the doctrine applied, where there is no such ambiguity. See Offhouse v. State Board of Education, 131 N.J.L. 391, 395 (Sup. Ct. 1944); Weinacht v. Board of Chosen Freeholders of County of Bergen, 3 N.J. 330, 335 (1949); Petrangeli v. Barrett, 33 N.J. Super. 378, 386 (App. Div. 1954). As summed up by McQuillin in 6 Municipal Corporations (3d ed. 1949), § 20.45, p. 107, at p. 112, "* * * the point is well settled [that] the doctrine of contemporaneous or administrative construction has no application when the intention of the ordinance is plain, unambiguous and not susceptible to different or contrary reasonable construction." Such we find to be the case here.
Finally, the Spissos contend that their position is not identical with that of Roche and Frank and that the differences therein require different conclusions as to their lots. We find no merit in this argument. The first ground of distinction urged by these parties is that the easements carved out on the plats of their subdivisions (lots 160 and 161 on the reproduced portion of the filed map) have no street name designations and that the easement widths for the most interior lot in each subdivision are less than 20 feet. It should be apparent from what we have already *505 said that the absence of a street name and the smaller width dimensions do not derogate from the functional character of the easement strips; and it is the functional nature of the easements as streets which is dispositive of the issue as to all of the lots involved. Secondly, the Spissos urge that prior to the filing of their subdivision plats they had operated a commercial venture on the two original lots in question since 1943, of which plaintiffs had full knowledge, and that their subdivision plans were the result of a zoning amendment, requested by them, changing their lots from commercial use to Class A residential use (single family). They fail, however, to indicate the relevance of this fact to their position on the main issue, and we do not see it. There is a veiled suggestion of delay after the issuance of building permits in bringing these proceedings, but laches is not argued, and the record would not support any such defense. If there is any meritorious claim of hardship in the impact of the ordinance as we construe it (as to which we imply no opinion), this can be made the subject of an application for variance before the board of adjustment.
Reversed, with directions for entry of judgment in favor of plaintiffs. No costs.