FAS, LLC, Petitioner-Respondent,

v.

TOWN OF BASS LAKE,
Respondent-Appellant-Petitioner,

SAWYER COUNTY ZONING COMMITTEE, Sawyer County
Board of Appeals and Sawyer County Zoning
Administrator, Respondents-Respondents,

STATE of Wisconsin,
Intervening-Respondent-Respondent.

Supreme Court

*No. 2005AP1689. Oral argument January 4, 2007.
—Decided June 19, 2007.*

2007 WI 73

(Also reported in 733 N.W.2d 287.)

321

322

For the respondent-appellant-petitioner there were briefs by *Thomas W. Harnisch* and *Thomas Harnisch Law Office,* Neillsville, and oral argument by *Thomas Harnisch.*

For the petitioner-respondent there were briefs and oral argument by *Clifford E. Stoner,* Hayward.

For the intervening-respondent-respondent the cause was argued by *Diane L. Milligan,* assistant attorney general, with whom on the brief was *Peggy A. Lautenschlager,* attorney general.

An amicus curiae brief was filed by *Paul G. Kent, Abigail C.S. Potts,* and *Anderson & Kent, S.C.,* Madison, on behalf of the Wisconsin Builders Association, and there was oral argument by *Paul G. Kent.*

An amicus curiae brief was filed by *Thomas D. Larson,* and *Debra P. Conrad,* Madison, on behalf of the Wisconsin REALTORS Association.

¶ 1. PATIENCE DRAKE ROGGENSACK, J. This is a review of an unpublished per curiam decision of the court of appeals[1] that affirmed the circuit court's order[2] concluding that the Sawyer County Board of Appeals (board of appeals) proceeded on an incorrect theory of law when it concluded that a navigable stream mean-

---

[1] *FAS, LLC v. Town of Bass Lake,* No. 2005AP1689, unpublished slip op., ¶ 2 (Wis. Ct. App. May 31, 2006).

[2] Sawyer County Judge John P. Anderson presided.

dering through a parcel divides the parcel into two lots and, based on that conclusion, that neither of the lots formed by the stream's division of the parcel had the minimum lakeshore frontage of 100 feet. The circuit court reversed and the court of appeals affirmed the circuit court, reasoning that since a riparian owner holds title to the center of a navigable stream, a landowner who owns both shores of a navigable stream owns the entire streambed. *FAS, LLC v. Town of Bass Lake*, No. 2005AP1689, unpublished slip op., 10 (Wis. Ct. App. May 31, 2006). As a result, the court of appeals concluded that the parcel was not divided by Johnson Creek. *Id.*

¶ 2. A riparian owner holds qualified title to the center of a navigable stream. Therefore, when the same riparian owner holds qualified title to the property on both shores of the stream, his ownership is continuous throughout the streambed. Accordingly, a navigable stream meandering over a parcel does not divide the parcel into two parcels when the same riparian owner holds qualified title to the property on both shores of the stream. We also conclude that under the Sawyer County Zoning Ordinances then in effect, the entire parcel, including the streambed, is used to calculate the width of the lakeshore frontage. Therefore, because the board of appeals proceeded on an incorrect theory of law in regard to whether the navigable stream divided the parcel, it inaccurately calculated the width of the parcel at issue under the then effective zoning ordinance. Accordingly, we affirm the court of appeals.

## I. BACKGROUND

¶ 3. FAS, LLC (FAS) owned a parcel of real estate on Lac Courte Oreilles in the Town of Bass Lake, Sawyer County, Wisconsin, known as Government Lot

4. On July 12, 2002, FAS recorded a Certified Survey Map (CSM) creating from a portion of Government Lot 4 two CSM lots, each with approximately 104 feet of lake frontage on the shores of Lac Courte Oreilles. The portion of Government Lot 4 that remained after creation of CSM Lots 1 and 2 is the parcel at issue in this review. On September 5, 2002, FAS recorded this parcel as the Bayshore Pines Condominium (hereinafter the condominium parcel). The condominium parcel has approximately 103 feet of lakeshore frontage. This frontage includes approximately seven feet of the mouth of Johnson Creek, a navigable stream that flows through the parcel and terminates at the shoreline of Lac Courte Oreilles.

¶ 4. FAS's original map of the condominium parcel did not make any reference to Johnson Creek. Subsequently, the Town notified the Sawyer County Zoning Administrator (zoning administrator) that it believed the condominium parcel contained a navigable stream that divided the parcel into two lots; and therefore, the minimum lakeshore frontage requirement for a buildable lot was not satisfied. However, contrary to the zoning administrator's determination and the Town's contention, the zoning committee decided that the condominium parcel was not divided into two lots by Johnson Creek and that the mouth of Johnson Creek should be included in the calculation of lakeshore frontage under Sawyer County's zoning ordinance. The zoning committee stated that "the lake classification is based on density and the lot meets that density requirement."

¶ 5. The Town appealed the zoning committee's decision to the board of appeals, and the board of appeals overturned the zoning committee's decision. It did so because it determined that Johnson Creek di-

vided the condominium parcel into two unequally sized lots, neither of which met the minimum lakeshore frontage requirement of 100 feet. The board of appeals concluded that the zoning committee erred as a matter of law by not following an attorney general opinion, 66 Op. Att'y Gen. 2 (1977). The board of appeals quoted the following portion of the 1977 attorney general opinion as the basis for its decision:

> A body of navigable water separates a parcel of land as effectively as does a public highway. Land owners abutting on navigable streams hold a qualified title to the center of the stream bed. . . . Therefore, parcels separated by navigable waters are no more susceptible to functional integration than parcels separated by public highways.

66 Op. Att'y Gen. at 8.

¶ 6. FAS appealed the board of appeals' decision to the Sawyer County Circuit Court by statutory certiorari pursuant to Wis. Stat. § 59.694(10) (2003–04).[3] The circuit court reversed the decision, concluding that a landowner holds title to the center of a navigable streambed, and therefore, when a landowner owns both shores of the stream, the stream does not divide the parcel into two parcels or lots. Thereafter, the circuit court reviewed the zoning ordinance and concluded that the condominium parcel satisfied the minimum lakeshore frontage requirement for a "lot." The circuit court stated that attorney general opinions are only of persuasive value and are not precedent. Since the circuit court concluded the 1977 opinion contained an erroneous statement of law, the court also concluded that the board of appeals proceeded on an incorrect theory.

---

[3] All subsequent references to the Wisconsin Statutes are to the 2003–04 version unless otherwise indicated.

¶ 7. The Town appealed the circuit court's decision and in a per curiam opinion, the court of appeals affirmed the circuit court's conclusion that a navigable stream does not legally divide a parcel when the same owner owns the land on both sides of the stream. *FAS*, No. 2005AP1689, unpublished slip op., ¶ 2.[4] The court of appeals also recognized that attorney general opinions are not binding authority. *Id.*, ¶ 9. The court of appeals reasoned that since abutting landowners hold title to the center of the creek, "where a single landowner owns both banks, the landowner 'owns' the entire creek." *Id.*, ¶ 10. The court also noted that the Town cited "no state law or county ordinance supporting its contention that a parcel bisected by a creek is not treated as a single lot or that a creek mouth bisecting a lot cannot be included for purposes of determining lakeshore frontage." *Id.* The Town petitioned for review, which we granted.

## II. DISCUSSION

### A. Standard of Review

¶ 8. This case is before us on certiorari review, pursuant to Wis. Stat. § 59.694(10).[5] "On appeal from an order or judgment entered on certiorari, a reviewing

---

[4] The Town also argued to the court of appeals that the case should be remanded to the board of appeals for a de novo hearing because the board of appeals erroneously concluded as a matter of law that it had no authority to conduct such a hearing. *FAS*, No. 2005AP1689, unpublished slip op., 2. The court of appeals concluded there was no basis for remand. *Id.*

[5] Wisconsin Stat. § 59.694(10) states, in part:

A person aggrieved by any decision of ... any ... board ... of the municipality, may, within 30 days after the filing of the decision

court reviews the record of the agency, not the findings or judgment of the circuit court." *Wood v. City of Madison*, 2003 WI 24, ¶ 12, 260 Wis. 2d 71, 659 N.W.2d 31. In statutory certiorari, when additional evidence is not taken, review is confined to the record before the board of appeals and is limited to an examination of:

> (1) whether the board kept within its jurisdiction;
> (2) whether it proceeded on a correct theory of law;
> (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will and not its judgment; and (4) whether the board might reasonably make the order or determination in question based on the evidence.

*State ex rel. Ziervogel v. Wash. County Bd. of Adjustment*, 2004 WI 23, ¶ 14, 269 Wis. 2d 549, 676 N.W.2d 401. The second of these issues is the only issue implicated in our review of the board of appeals' decision. Whether an agency has proceeded on a correct theory of law is subject to independent appellate review. *Id.*

¶ 9. In reviewing the board of appeals' decision, we interpret provisions in the Sawyer County Zoning Ordinances and in the Wisconsin Statutes. The interpretation of an ordinance is a question of law that we review independently. *Bruno v. Milwaukee County*, 2003 WI 28, ¶ 6, 260 Wis. 2d 633, 660 N.W.2d 656. The interpretation of a statute is also a question of law that we review independently, "but benefiting from the analyses of the court of appeals and the circuit court."

in the office of the board, commence an action seeking the remedy available by certiorari. ... The court may reverse or affirm, wholly or partly, or may modify, the decision brought up for review.

*Marder v. Bd. of Regents of the Univ. of Wis. Sys.*, 2005
WI 159, ¶ 19, 286 Wis. 2d 252, 706 N.W.2d 110.

## B. Condominium Parcel's Lakeshore Width

¶ 10. As we begin our discussion, it is important to
focus on the question that this review is to address:
Whether the seven feet of lake frontage that is occupied
by the mouth of Johnson Creek should be counted in
determining the lakeshore width of the condominium
parcel under the applicable zoning ordinance. If it can be
counted, then the condominium parcel has sufficient
shoreline, at least 100 feet, to constitute a buildable
parcel or lot under the Sawyer County Zoning Ordi-
nances then in effect. *See* Wis. Admin. Code § NR
115.05(3)(a)2.;[6] Sawyer County Zoning Ordinance
§ 18.3 (last amended January 18, 2007).[7] It is the
Town's position that Johnson Creek divides the condo-
minium parcel into two lots, neither of which has 100
feet of shoreline width.

### 1. Wisconsin common law

¶ 11. There is no statute that answers the ques-
tion of whether a navigable stream that runs through a
parcel divides the parcel into two lots or parcels. How-
ever, common law in Wisconsin provides that a riparian

---

[6] Wisconsin Admin. Code § NR 115.05(3)(a)2. states: "Lots
not served by public sanitary sewer shall have a minimum
average width of 100 feet and a minimum area of 20,000 square
feet."

[7] Sawyer County Zoning Ordinance § 18.3 provides that
unsewered lots in the R-1 zoning district must have a minimum
lot width of 100 feet. Apparently, the condominium parcel is
unsewered and is zoned Residential/Recreational.

owner holds qualified title to the geographical center of a navigable stream. *State v. Trudeau,* 139 Wis. 2d 91, 101, 408 N.W.2d 337 (1987) (citing *Muench v. Pub. Serv. Comm'n,* 261 Wis. 492, 501–02, 53 N.W.2d 514, 55 N.W.2d 40 (1952)).[8] It follows that since a riparian owner holds qualified title to the center of the stream, where a riparian owner holds qualified title to both shores of the stream, the riparian owner has qualified title to the entire bed of the stream as well. It seems logical to conclude that if one owns both banks of a stream, as well as the entire bed of a stream that runs through a parcel, there is no legal division of the parcel into two lots or parcels, unless a division has been made by some other means. For example, one could own two tracts of land where the stream has been recorded as the divisor of the two tracts, with one tract on each side of the stream. However, those are not the facts with which we are presented.

---

[8] The test for navigability is whether the body of water is " 'capable of floating any boat, skiff, or canoe, of the shallowest draft used for recreational purposes.' " *State v. Kelley,* 2001 WI 84, ¶ 30, 244 Wis. 2d 777, 629 N.W.2d 601 (quoting *Muench v. Pub. Serv. Comm'n,* 261 Wis. 492, 506, 53 N.W.2d 514, 55 N.W.2d 40 (1952)). The test "does not depend on whether [the body of water] is always navigable, or whether its navigability is due to natural conditions." *Id.* "[T]he test is whether the navigability is regularly recurring or of a sufficient duration to make it conducive to recreational uses." *Id.* (citing *DeGayner & Co. v. DNR,* 70 Wis. 2d 936, 946, 236 N.W.2d 217 (1975)). All parties agree that Johnson Creek is navigable. We have characterized the landowner's title as a "qualified title" because "the state holds the beds underlying navigable waters in trust for all of its citizens, subject only to the qualification that a riparian owner on the bank of a navigable stream has a qualified title in the stream bed to the center thereof." *Muench,* 261 Wis. at 501–02.

¶ 12. The board of appeals relied on an attorney general opinion, 66 Op. Att'y Gen. 2, to conclude that Johnson Creek divided the condominium parcel into two lots. The 1977 opinion discussed the proper calculation of land area for purposes of applying what was at that time Wis. Stat. § 236.02(8) (1977–78), renumbered as § 236.02(12).

¶ 13. As an initial matter, and as will be discussed in more detail infra, Wis. Stat. § 236.02(12) is not applicable to our analysis for at least two reasons. First, a declaration of condominium is not a subdivision of land as defined in ch. 236. Wis. Stat. § 703.37. Second, even if ch. 236 were used by analogy,[9] the determination of lot sizes under § 236.02(12) refers to lot area and not lot width or lakeshore frontage, which is the issue this case presents.

¶ 14. The Town contends that the 1977 attorney general opinion regarding the division of parcels by navigable streams requires us to conclude that Johnson Creek divides the condominium parcel into two lots, and therefore, the minimum lakeshore frontage requirement is not met by either lot. We disagree with the Town's contention. As we explain below, the cases on which the attorney general opinion relied are based on other ordinances, and their reasoning is not applicable here.

---

[9] It is not necessary to address the State's argument that the zoning issues should have been resolved through county subdivision review pursuant to Wis. Admin. Code § NR 115.05(4) and Sawyer County Subdivision Control Ordinance § 3.3. Although the State of Wisconsin, on behalf of the Department of Natural Resources, was permitted to intervene as an additional respondent, we note that the July 7, 2002, approval of the two-lot certified survey division was unsuccessfully challenged by the Town in a separate action. Accordingly, land division issues relating to the CSM are not before us in this review.

¶ 15. The attorney general opinion concluded that a parcel is separated into two parcels by a navigable stream because the two sides of the stream are not functionally integrated, stating:

> A body of navigable water separates a parcel of land as effectively as does a public highway. Land owners abutting on navigable streams hold a qualified title to the center of the stream bed. . . . Therefore, parcels separated by navigable waters are no more susceptible to functional integration than parcels separated by public highways.

66 Op. Att'y Gen. at 8. The opinion relied on a case from New Jersey for the proposition that all the land in a parcel must have "functional integration"; that is, all the land in a parcel must be able to be put to the use of the owner. *Id.* at 4–5 (citing *Loveladies Prop. Owners Ass'n v. Barnegat City Serv. Co.*, 159 A.2d 417 (1960)). The attorney general opinion concluded that because a navigable stream has public rights of use, it separates the function of the property chosen by the owner from the function accorded to the public. *Id.* at 8. It was this separation of functions by a navigable stream that the attorney general opinion saw as the factor that causes a navigable stream to divide the parcel over which the stream meanders. *Id.* The attorney general opinion described this separation as a lack of "functional integration." *Id.*

¶ 16. However, in *Loveladies,* a local ordinance was interpreted in light of a subdivision plat that used easements to create private streets in order to provide a dense housing pattern that would not have been possible with public streets whose width is greater than that used for the private streets. *Loveladies,* 159 A.2d at 421. In addition, in New Jersey, public streets are not included in the calculation of the size of a lot. *Id.* at 422.

As one of the rationales for its holding, the New Jersey court explained that the function of a lot is to provide a defined space upon which to build, while the function of a street is for public passage. *Id.* The court went on to explain that these distinct functions are necessary to the overall concept of a subdivision that requires both functions. *Id.* The court also explained that the ordinance contemplates "mutual exclusion between lot areas and street areas" due to the way it defines "corner lot" as "fronting on two streets at their intersection." This description would not make sense if a lot both "fronted" on a street and "included" the street. *Id.* at 424. Nowhere in *Loveladies* is the term "functional integration" used. That term appears to have been coined by the attorney general opinion.

¶ 17. The attorney general opinion also cited *Weisbrod v. Daenicke,* 36 Wis. 73 (1874), as consistent with its functional integration theory. 66 Op. Atty Gen. at 5. In *Weisbrod,* we interpreted a statute that exempted a homestead from claims of creditors if the parcel of land did not exceed one-quarter acre and was occupied by the landowner. *Weisbrod,* 36 Wis. at 75–76. The court recognized that an owner has fee ownership to the center of an adjoining street, subject to the public easement. *Id.* at 76. However, the court determined that the area of the homestead parcel should be calculated without inclusion of the land on which the street was placed, reasoning that the object of the statute was to secure the debtor a home upon which he and his family could live. *Id.* Because the debtor "has no right to occupy the street for such a purpose, to build upon it, to cultivate it, or to appropriate it to any domestic use," counting the land under the street would frustrate the purpose of the statute. *Id.* However, the purpose behind the statute interpreted in *Weisbrod* has no relevance

335

here. Whether we count the streambed as part of the width of the condominium parcel has nothing to do with whether the owner of the condominium parcel will have sufficient land on which to support himself and his family, as was the concern in *Weisbrod*.

¶ 18. While attorney general opinions may be considered persuasive authority, they are not precedent for any court. *State v. Chvala*, 2003 WI App 257, ¶ 25 n.7, 268 Wis. 2d 451, 673 N.W.2d 401; *Ahlgren v. Pierce County*, 198 Wis. 2d 576, 583, 543 N.W.2d 812 (Ct. App. 1995). We conclude that this attorney general opinion is neither precedent nor persuasive for the issue we address here: Whether the seven feet of lake frontage that is occupied by the mouth of Johnson Creek should be counted in determining the lakeshore width of the condominium parcel under the applicable zoning ordinance.

¶ 19. Furthermore, as we explained above, in Wisconsin a riparian owner holds qualified title to the geographical center of the bed of a navigable stream. *Trudeau*, 139 Wis. 2d at 101. Since a riparian owner holds qualified title to the center of a navigable streambed, where a riparian owner holds qualified title to both shores of the stream, the physical divide caused by the stream does not interfere with the unified ownership of the parcel. Were we to agree with the board of appeals, we would be creating new parcels in Wisconsin wherever there is a meandering navigable stream running over land that has in the past been treated as one parcel.

¶ 20. Wisconsin law regarding municipal annexation supports our conclusion that a navigable stream should not affect unified ownership of land. For ex-

ample, the Town of Campbell challenged the validity of its annexation by the City of La Crosse on the basis that the annexed property was not contiguous with the City of La Crosse as required by statute because the Black River, which was approximately 800 feet wide in the area, separated the properties. *Town of Campbell v. City of La Crosse,* 2001 WI App 201, ¶¶ 1–2, 247 Wis. 2d 946, 634 N.W.2d 840. The court of appeals recognized that a riparian owner holds title to the center of the stream and stated:

> We find no authority for the proposition that a river running over the point of contact renders properties non-contiguous . . . . Therefore, we find that the property of the City [of La Crosse] meets the annexed properties at the center of the riverbed of the Black River. It follows that the annexed properties are "contiguous" . . . .

*Id.,* ¶ 19.[10] Because we have concluded that the condominium parcel is one parcel, not two lots, we turn to the

---

[10] The court of appeals distinguished its decision from *Town of Delavan v. City of Delavan,* 176 Wis. 2d 516, 500 N.W.2d 268 (1993), where we concluded that the properties were not contiguous because they were separated by a lake on the basis that unlike riverbeds, lakebeds are owned by the state. *Town of Campbell v. City of La Crosse,* 2001 WI App 201, ¶¶ 17–18, 247 Wis. 2d 946, 634 N.W.2d 840. Nonetheless, the court in *Town of Delavan* declined to void annexation based on the principle of de minimis. *Town of Delavan,* 176 Wis. 2d at 530.

FAS argues that the doctrine of de minimis renders the existence of Johnson Creek insufficient to divide the lot or disrupt a continuous lakeshore frontage measurement. *See, e.g., Town of Delavan,* 176 Wis. 2d at 530–31 (concluding that for purposes of municipal annexation, the lake disrupted contiguity of property; however, the land was such a tiny fraction of property that the principle of de minimis rendered the lack of contiguity insufficient to void annexation). Since we conclude

Sawyer County Zoning Ordinance to determine whether the condominium parcel has sufficient lakeshore frontage to build upon, according to the applicable zoning ordinances.

2. Zoning ordinances

■

¶ 21. We interpret ordinances in the same manner as we interpret statutes because " '[t]he rules for the construction of statutes and municipal ordinances are the same.' " *Bruno,* 260 Wis. 2d 633, ¶ 6 (citation omitted). The additional purpose of area zoning is to regulate "density, setbacks, frontage, height, and other dimensional attributes, in order to promote uniformity of development, lot size, and building configuration and size." *Ziervogel,* 269 Wis. 2d 549, ¶ 22. The additional purpose of shoreland zoning is to protect the public's interest in navigable waters, including promoting healthful water conditions conducive to protecting aquatic life and fish. *Id.* We interpret zoning ordinances in light of their purposes. *Id.*

¶ 22. To resolve the question this review poses, we begin with Sawyer County Zoning Ordinance § 2.1 as it appeared when the board of appeals made its decision because the board of appeals decision rested on its conclusion that Johnson Creek divided the condominium parcel into two "lots." The ordinance defined "lot" as follows:

> (36) LOT: A parcel of land occupied or capable of being occupied by one building and the accessory buildings or uses customarily incidental to it, including such open spaces as are required by this ordinance.

that the property is not divided by Johnson Creek, it is unnecessary for us to address this argument.

The ordinance also defines lot characteristics, e.g., "lot, area of"; "lot, front"; "lot, depth of"; "lot, width of"; and "lot lines." The Town argues that the definition of "lot, front" is relevant to our decision. That definition is as follows:

> (38) LOT, FRONT: On shoreland lots, the front shall be the area from the shoreline landward. On nonshoreland lots, the front shall be the area from the road or road easement away from the road.

¶ 23. The Town first argues that paragraph 38 of the zoning ordinance that defines "lot, front" actually defines a "front lot." After reversing the words of the ordinance, the Town then asserts that its interpretation of paragraph 38 shows that Johnson Creek created two "front lots" out of the condominium parcel. The Town's interpretation of paragraph 38 of the zoning ordinance is certainly novel, but unpersuasive. Paragraph 38, quoted above, is a directional definition that explains which side of a lot is the "front." This is done to facilitate an understanding of the part of the property on which certain areas of open space and other setback restrictions are required. *See* Sawyer County Zoning § 4.

¶ 24. The Town then argues that because no buildings or structures can be placed on any public use area, such as a navigable stream or public road, a "lot" cannot include any public use area because the zoning ordinance's definition of "lot" requires the capability of being occupied by a building. This argument may have validity were Johnson Creek 90 feet wide as it meandered through the condominium parcel because then there would be no land area for a building, which would preclude the land owned by FAS on either side of Johnson Creek from satisfying the definition of "lot" in the zoning ordinance. Here, the argument proves too

339

much because the ordinance's definition of "lot" is a functional one, i.e., a "lot" must be "occupied or capable of being occupied by one building." Sawyer County Zoning § 2.1(36). However, the land to the south of Johnson Creek is only a few feet wide and is not capable of being occupied by a building. Therefore, that land could not be a "lot" under the ordinance's definition because it is functionally insufficient. Furthermore, in shoreland zoning, no structure can be constructed within 75 feet of the ordinary highwater mark. Sawyer County Ordinance § 4.49. However, though no structure can be built in this area, it does not follow that it is not part of the lot. The same can be said for front, rear and side yard setbacks.

¶ 25. We conclude that the zoning committee's interpretation of the ordinances is in keeping with the ordinance's purpose. The zoning committee concluded that the shoreland width regulation for the property has as its purpose the control of density, and that the condominium parcel satisfies that purpose as the frontage is at least 100 feet. Furthermore, including the width of the streambed as part of the width of the lakeshore frontage does not undermine the other shoreland zoning purposes because both the Department of Natural Resources' and Sawyer County's regulations requiring setbacks from the ordinary highwater marks and prohibiting land disturbing activities promote the public's interest in Lac Courte Oreilles and Johnson Creek regardless of how the shoreline width of the condominium parcel is calculated. *See* Wis. Admin. Code NR § 115.05(3)(b) and (c); Sawyer County Zoning § 4.49.

¶ 26. In its brief, the Town correctly recognized that the definition of "lot" in the ordinance does not mention a navigable stream. In addition, the public has

340

a right to use navigable streams, and therefore, a riparian owner cannot place a structure on the bed of a navigable stream without approval or exemption from regulation. *See* Wis. Stat. § 30.12; *Town of Campbell,* 247 Wis. 2d 946, ¶ 16; *DeGayner & Co. v. DNR,* 70 Wis. 2d 936, 945, 236 N.W.2d 217 (1975) (stating that a riparian landowner has "qualified title" to the bed of a navigable stream, which is subject to the public's easement of navigation). However, that premise does not assist in interpreting the definition of "lot" in the Sawyer County Zoning Ordinances. As we explained above, the definition of "lot" in paragraph 36 of the zoning ordinance is a functional one, i.e., the land must be "occupied or capable of being occupied" by a building. Sawyer County Zoning § 2.1(36). That definition may prevent a parcel with a very wide meandering stream from meeting the zoning ordinance's definition of a "lot," but those facts are not present here.

¶ 27. Furthermore, even though we are addressing the proper calculation of the width of lakeshore frontage or lot width and not lot area, it is instructive to note that the definition of "lot, area" in Sawyer County Zoning Ordinance § 2.1(37), provides: "LOT, AREA OF: The contiguous, not separated by public roadway, of a lot between its front, rear, and side lot lines." Under the doctrine of *expressio unius est exclusio alterius,* "the express mention of one matter excludes other similar matters [that are] not mentioned." *Perra v. Menomonee Mut. Ins. Co.,* 2000 WI App 215, ¶ 12, 239 Wis. 2d 26, 619 N.W.2d 123. Since the definition of "lot, area" excludes public roadways, but makes no mention of navigable streams, it follows that the definition of "lot, area" does not exclude the bed of a navigable stream. While this definition is not directly applicable to deter-

mining whether a "lot" as defined in the zoning ordinance includes a navigable stream, it can be argued that if the streambed is not included in the calculation of the area of a lot, the bed of a navigable stream also should not be included in the calculation of the width of lakeshore frontage of a lot under the same municipality's zoning ordinances.[11]

¶ 28. Accordingly, we conclude that the board of appeals applied an incorrect theory of law in its determination that the condominium parcel is two lots, neither of which meet the 100 foot frontage requirement. We also conclude that the record shows the condominium parcel has a lakeshore width of greater than 100 feet.

### 3. Wisconsin statutes

¶ 29. The statutes by which the remaining parcel of Government Lot 4 became a condominium are contained in Wis. Stat. ch. 703. It provides that a condominium form of ownership is created by recording a declaration of condominium and a map or plat for the property with the register of deeds for the county where

---

[11] During oral argument it was brought to our attention that Sawyer County amended its Subdivision Control/Condominium Ordinances subsequent to the board of appeals decision in this case, and that it excluded navigable waterways along with public roadways from the definition of "lot, area." In addition, § 4.0, Classifications of Land Division, now provides, "[a]ny contiguous parcel or tract of land which is owned, controlled or managed as a single entity shall be treated as a single parcel or tract of land for the purpose of this ordinance unless it is divided ... by navigable water." Because these ordinances were not in effect at the time the board of appeals made its decision, we have not addressed them, except to note them for the reader.

the property is located. Wis. Stat. § 703.07. Zoning or other land use ordinances must apply in the same way to condominiums as to other forms of ownership.[12] Wis. Stat. § 703.27. "[A] condominium is a form of ownership [and] not a form of land use, [nor] is [it] a subdivision as defined in ch. 236." Wis. Stat. § 703.37.

¶ 30. The State argues that Wis. Stat. ch. 236, which regulates subdivisions of land, must be applied in deciding this case because the original CSM began a problem that is continued by the condominium parcel. We do not address any perceived problems with the CSM because those issues have been proceeded on in a separate lawsuit and are not before us. As we explained when we began our analysis of the issue presented, the question we decide is whether the width of the condominium parcel, properly calculated, is 100 feet or greater.

¶ 31. We note that in order to be a subdivision within the scope of ch. 236, two things must occur: First, there must be a land division, and second, the land division must create five or more parcels or building sites. Wis. Stat. § 236.02(12).[13] We also note that under Wis. Admin. Code § 115.05(4), "all land divisions in

---

[12] We note that the map of the condominium parcel shows four buildings. This opinion does not address whether the zoning permits the construction of four dwelling units on the condominium parcel. That question is not before us.

[13] Wisconsin Stat. § 236.02(12) defines "subdivision" as:

a division of a lot, parcel or tract of land by the owner thereof or the owner's agent for the purpose of sale or of building development, where:

(a) The act of division creates 5 or more parcels or building sites of 1½ acres each or less in area; or

shoreland areas which create 3 or more parcels or building sites of 5 acres each or less within a 5–year period" must be reviewed by the county pursuant to Wis. Stat. § 236.45. And in addition, the Sawyer County Zoning Committee Subdivision Control Ordinance § 2.4 (adopted March 26, 1971 and last amended March 20, 2003) in effect at the time the board of appeals decided this matter states: "Every division of land within the unincorporated areas of Sawyer County shall be subject to the provisions of this ordinance and Chapter 236 of the Wisconsin Statutes." However, we have found no authority for the proposition that the recording of a declaration of condominium is a division of land, rather than simply a change in the form of ownership of the parcel. Wis. Stat. § 703.37; *see Herman v. County of Walworth,* 2005 WI App 185, ¶ 13, 286 Wis. 2d 449, 703 N.W.2d 720 (concluding that an application for conditional use permits to construct condominiums is not a division of land).

¶ 32. Notwithstanding the need to show that a land division has occurred in order to fall within the parameters of ch. 236, neither the State nor any other party attempts to persuade us that what occurred with the recording of the condominium declaration and map is land division. Perhaps that is because each party has noted that Wis. Stat. § 703.37 provides that a condominium is a form of ownership, not a form of land use or a subdivision under ch. 236. However, whatever the reason, we are not willing to parse the foundational requirements necessary for the application of the provisions of ch. 236. We simply note their absence and

---

(b) Five or more parcels or building sites of 1½ acres each or less in area are created by successive divisions within a period of 5 years.

conclude that we have not been shown that any action taken relative to the creation of the condominium form of ownership brings the condominium parcel within the scope of ch. 236.

## III. CONCLUSION

¶ 33. We conclude that a navigable stream meandering over a parcel does not divide the parcel into two parcels when the same riparian owner holds qualified title to the property on both shores of the stream. We also conclude that under the Sawyer County Zoning Ordinances then in effect, the entire parcel, including the streambed, is used to calculate the width of the lakeshore frontage. Therefore, because the board of appeals proceeded on an incorrect theory of law in regard to whether the navigable stream divided the parcel, it inaccurately calculated the width of the parcel at issue under the then effective zoning ordinance. Accordingly, we affirm the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 34. SHIRLEY S. ABRAHAMSON, C.J. (*dissenting*). I agree with the majority opinion on the first issue presented for review: whether the navigable waterway in the instant case legally divides the subject parcel into two or more parcels. The answer is "no."

¶ 35. I cannot, however, join the majority opinion for two reasons:

(1) I do not understand why the majority opinion concludes that the bed of a navigable stream is included in the definition of "lot" and in the calculation of lot area and why a calculation of lot area depends on how wide the navigable stream is. A navigable waterway should not be used to calculate lot area or lakeshore frontage.

345

(2) The case should be remanded to the circuit court to decide issues not addressed by the majority opinion. I would remand the cause to the circuit court to determine whether the condominium parcel should have been reviewed according to local land division rules (including deciding whether this matter is barred by claim preclusion) and to determine what effect, if any, the amended Sawyer County ordinances have on the instant case.

I

¶ 36. I cannot follow the majority opinion's discussion of the definition of "lot" in the zoning ordinance. *See* majority op., ¶¶ 21–24. The majority opinion appears to hold that the definition of "lot" and the calculation of lot area for a parcel include the bed of the navigable stream "owned" by the riparian owner, and then concludes that the width of this stream bed must also be included in lakeshore frontage. Majority op., ¶¶ 26–27.

¶ 37. The majority opinion, however, also concludes that the definition of "lot" is a "functional one." Majority op., ¶ 26. Then why isn't it more logical to hold that because public highways are not included in the definition of "lot" or in the calculation of lot area because no building is permitted on the highway, other public thoroughfares that the "owner" cannot build on or freely use (that is, similarly non-functional spaces), like navigable waterways, ought not count in the definition or "lot," or in the calculation of lot area, or in the calculation of lakeshore frontage? Thus, regardless of whether the parcel at issue is one lot or whether the navigable water divides the parcel into two lots, the width of the navigable water should not count in the calculation of lakeshore frontage.

346

¶ 38. Because it focuses on a "functional" definition of "lot," the majority opinion concludes that "[t]hat definition may prevent a parcel with a very wide meandering stream from meeting the zoning ordinance's definition of a 'lot' . . . ." Majority op., ¶ 26. Why would the width of the navigable stream change the definition of "lot" or calculation of lot area under the zoning ordinance? How wide does the navigable stream have to be to be too wide under ¶ 24 of the majority opinion?

¶ 39. I also do not understand how, on the one hand, the majority opinion can conclude that the "functional" definition of "lot" and lot area is useful in determining the effect of a navigable waterway in determining lot area and, on the other hand, declare unpersuasive the 1977 attorney general opinion that took a functional approach to calculating lot size. Both the majority opinion and the 1977 attorney general opinion examine whether navigable waterways can be used in determining "lot" measurements, like lot area. Both recognize that the question of what constitutes a "lot" is a matter of the function of the ordinance in question. Yet, the majority opinion, without recognizing the irony and inconsistency of its position, scoffs at the reasoning and conclusion of the 1977 attorney general opinion.

## II

¶ 40. Even though I agree with the majority opinion's holding that a navigable stream meandering over a parcel does not divide the parcel into two parcels when the same riparian owner holds title to the property on both shores of the stream, majority op., ¶ 2, I

347

would remand the cause to the circuit court to address two issues that are not sufficiently addressed by the majority opinion.

¶ 41. First, more consideration than the majority opinion's two paragraphs (¶¶ 31–32) should be given to the State's well-developed argument that the condominium parcel resulted from a subdivision of land that was subject to (but did not get) subdivision review pursuant to Wis. Admin. Code § NR 115.05(4) and the Sawyer County Subdivision Control Ordinance § 2.4. FAS had one parcel of land (Government Lot 4) from which it allegedly carved off two parcels of land. The "remaining portion" of Government Lot 4 was later recorded as a condominium parcel. Wasn't this "remaining portion" of the original lot, in effect, the third piece of land created by the subdivision? Sounds to me like a good argument worthy of a court's full consideration. FAS argues that this argument was waived, or in the alternative, is barred by claim preclusion.[1] A decision on this subdivision issue may be determinative of all issues presented in the instant case. I would remand to the circuit court to decide this issue.

¶ 42. Second, the County amended the ordinances governing lot area and land division after the Board decided the present matter. Navigable waterways are now excluded from the definition of "lot, area" and navigable waterways now divide a contiguous parcel of land. The majority opinion acknowledges this change in

---

[1] In Sawyer County Circuit Court Case No. 2004CV139, Appeal No. 2005AP1691, the Town and County challenged whether the other two parcels complied with certain zoning regulations. That case, however, did not involve the remaining portion of the land (what is now the condominium parcel) nor was the State a party.

a footnote but fails to analyze the effect, if any, of the amendments. Majority op., ¶ 27 n.11. The circuit court should determine whether the amended ordinances affect the calculation of lakeshore frontage in the present case.

¶ 43. For the reasons set forth, I write separately.

¶ 44. I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.