COURT OF APPEALS
DECISION
DATED AND FILED

December 14, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal Nos.   **2022AP1240**
                **2022AP1317**

Cir. Ct. Nos.  2022JV54
                  2022JV30

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

IN THE INTEREST OF C.W.P., A PERSON UNDER THE AGE OF 17:

STATE OF WISCONSIN,

   PETITIONER-RESPONDENT,

 V.

C.W.P.,

   RESPONDENT-APPELLANT.

APPEALS from orders of the circuit court for Winnebago County: LAKEISHA HAASE, Judge. *Affirmed.*

¶1      LAZAR, J.[1]  C.W.P.[2] appeals from nonfinal orders[3] of the circuit court waiving juvenile jurisdiction in two consolidated[4] juvenile cases.  The State petitioned for two juvenile delinquencies regarding C.W.P., the second for conduct in the courthouse after a hearing in the first case.  The State petitioned for waiver of juvenile jurisdiction in both cases.  The court held joint waiver hearings, spread over two days, and at the conclusion of the second hearing granted both waiver petitions pursuant to WIS. STAT. § 938.18.  C.W.P. contends that the circuit court failed to make "on the record" findings as to both prosecutive merit and the suitability of facilities and services available in the juvenile and mental health system.  This court affirms.

## BACKGROUND

¶2      C.W.P. is a juvenile who was waived into adult court on two separate delinquency matters.  The first of these relates to events on March 1, 2022, when C.W.P. and two other juveniles were alleged to have surrounded a vehicle carrying a group of teenagers at a gas station.  The petition and police report relate that C.W.P. and one of the other juveniles attempted to provoke a fight with the teenagers in the vehicle and then lifted up their shirts to expose the guns they had in their waistbands.  One of the teenagers called the police, who

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] To protect the identity of the juvenile, we refer to him as "C.W.P."

[3] This court granted leave to appeal the two orders on August 4, 2022.  *See* WIS. STAT. RULE 809.50(3).

[4] The two appeals were consolidated for the purposes of briefing and disposition by this court's order on September 23, 2022.  *See* WIS. STAT. RULE 809.10(3).

arrived and saw C.W.P. walking away with a gun. C.W.P. ignored officers' commands to stop walking and to put the gun down. Instead, he aimed the weapon at officers numerous times making homicidal and suicidal threats, including threats to shoot the people inside of a house he had stopped in front of, before finally complying with orders to put the gun down. After officers took C.W.P. into custody, they determined the gun was a CO2 pistol that looked like a Glock. C.W.P. was charged with two counts of second-degree recklessly endangering safety in violation of WIS. STAT. § 941.30(2), one as a party to a crime, disorderly conduct in violation of WIS. STAT. § 947.01(1), and two counts of threatening a law enforcement officer in violation of WIS. STAT. § 940.203(2). The State filed a petition for waiver of jurisdiction in the first case on March 10, 2022.

¶3 Before the waiver hearing on the first matter could be held, the second matter arose from C.W.P.'s April 20, 2022, court appearance regarding temporary placement. According to the delinquency petition for this matter, C.W.P. was upset with the outcome of his hearing and began yelling and swearing on his way out of the courtroom. C.W.P. then started fighting with the deputies transporting him to secure custody. The fight was recorded on video. C.W.P. tried to head-butt and bite the deputies. He spat at the deputies. He attempted to grab the service weapon of one of the deputies multiple times. C.W.P. was charged with attempt to disarm a peace officer in violation of WIS. STAT. § 941.21, discharge of bodily fluids at a public safety worker in violation of WIS. STAT. § 941.375, and battery by a prisoner in violation of WIS. STAT. § 940.20.

3

¶4     The State filed a petition for waiver in the second case on May 5, 2022, and the circuit court held joint waiver hearings on May 19[5] and July 8, 2022. The State called six witnesses. First, A.R., who was one of the people allegedly threatened by C.W.P. during the March 1 incident, testified about C.W.P.'s behavior during that incident. Second, Dr. Kevin Miller, a licensed psychologist retained by the State to evaluate C.W.P. in another case, testified that C.W.P. had a conduct disorder with limited prosocial emotions that would not likely be improved by further treatment by the time C.W.P. turned eighteen. Dr. Miller agreed that C.W.P. would "continue to be a danger to the public" beyond his eighteenth birthday.

¶5     Third, a juvenile intake specialist with the Winnebago County Department of Human Services testified that the County had received ninety-one referrals for C.W.P., which is the most she had seen in her ten years on the job. She further testified that it appeared C.W.P.'s aggressive behavior and dangerousness were escalating. Fourth, Steve Navis, a county social worker who had worked with C.W.P., discussed the fact that C.W.P.'s prior juvenile adjudications involved destruction of property, sexual assault, and armed robbery. He further discussed C.W.P.'s many different placements and treatments over the previous five years and he agreed that C.W.P.'s behaviors were escalating in spite of these placements and treatment. Navis did not recommend waiver since he could not "support that [they had] exhausted all efforts within the juvenile

---

[5] Some of the hearing transcripts from the first hearing indicate that it was held on April 19, 2022, but that cannot be possible since that would have been before the conduct and charges in the second delinquency matter. Accordingly, this court concludes that the first hearing was held on May 19, 2022.

system," because, for example, the department had not yet tried a residential treatment facility to treat C.W.P.'s mental health and substance abuse issues. Finally, the State called two police officers who testified about the incidents underlying the charges in each case.

¶6    C.W.P. testified on his own behalf against waiver, providing his version of the events underlying the offenses he allegedly committed. He discussed his mental health struggles and claimed that his actions on March 1, 2022, were really a suicide attempt or a cry for help. Last of all, C.W.P. called Dr. Claire Patterson, a licensed psychologist who had examined him for purposes of the waiver hearing. She testified that she had diagnosed C.W.P. with major depressive disorder, opiate and stimulus disorder, and complex post-traumatic stress disorder. She opined that C.W.P. would benefit from substance abuse treatment and that C.W.P. should not be waived into adult court because the treatment in the juvenile system was more appropriate for him.

¶7    The circuit court made its waiver ruling orally at the conclusion of testimony. The court waived C.W.P. into adult court, acknowledging that C.W.P. suffers from mental health diagnoses but finding that his "risky behavior" was leaving people (including children) in the community exposed to harm. It further noted that C.W.P.'s behaviors were intentional, serious, and escalating. The court found that previous treatment and disciplinary responses were not working.

¶8    Accordingly, the circuit court held that:

> The State has the burden to prove by clear and convincing evidence that it is not in [C.W.P.'s] best interest or the interest of the community for [C.W.P.] to remain in juvenile court and they have met that burden.

5

> I am going to grant the State's request to waive into adult court on those two matters.

The court also signed two orders in which it found that each "matter has prosecutive merit" and the waiver petitions were granted "because it is contrary to the best interests of the juvenile or the public for the circuit court with juvenile jurisdiction to hear [these] case[s]." C.W.P. appeals.

## STANDARD OF REVIEW

¶9    "The decision to waive juvenile court jurisdiction under WIS. STAT. § 938.18 is committed to the sound discretion of the [circuit] court." *State v. X.S.*, 2022 WI 49, ¶25, 402 Wis. 2d 481, 976 N.W.2d 425 (quoting *State v. Tyler T.*, 2012 WI 52, ¶24, 341 Wis. 2d 1, 814 N.W.2d 192). This court will "reverse the [circuit] court's decision to waive jurisdiction only if the court erroneously exercised its discretion." *X.S.*, 402 Wis. 2d 481, ¶25 (citation omitted).

¶10    This court "first looks to the record to see whether … discretion was in fact exercised. Assuming discretion was exercised, the appellate court will look for reasons to sustain the [circuit] court's discretionary decision." *See J.A.L. v. State*, 162 Wis. 2d 940, 961, 471 N.W.2d 493 (1991). "An appellate court will reverse a [circuit] court's waiver determination if and only if the record does not reflect a reasonable basis for the determination or a statement of the relevant facts or reasons motivating the determination is not carefully delineated in the record." *Id.*

## DISCUSSION

¶11    The legislature created the Juvenile Justice Code (JJC) (WIS. STAT. ch. 938) "to promote a juvenile justice system capable of dealing with the problem

6

of juvenile delinquency, a system which will protect the community, impose accountability for violations of law and equip juvenile offenders with competencies to live responsibly and productively." WIS. STAT. § 938.01(2). A key purpose behind the enactment is "diverting juveniles from the JJC through early intervention if possible, and responding to a child's needs for care and treatment in accordance with his or her best interests." *State v. Hezzie R.*, 219 Wis. 2d 848, 873, 580 N.W.2d 660 (1998).

¶12 There are two steps to a juvenile waiver proceeding. First, "[t]he court shall determine whether the matter has prosecutive merit." WIS. STAT. § 938.18(4)(a); *X.S.*, 402 Wis. 2d 481, ¶27. Such a determination is "functionally similar to a determination of probable cause in a preliminary examination." *P.A.K. v. State*, 119 Wis. 2d 871, 884, 350 N.W.2d 677 (1984) (citing *T.R.B. v. State*, 109 Wis. 2d 179, 190, 325 N.W.2d 329 (1982)). Once prosecutive merit has been found, the circuit court "advances to the second stage of the proceedings," *X.S.*, 402 Wis. 2d 481, ¶28, and considers the criteria set forth in § 938.18(5).

¶13 In this case, the statutory criterion at issue concerns the "adequacy and suitability of facilities, services and procedures available for treatment of the juvenile and protection of the public within the juvenile justice system, and, where applicable, the mental health system." WIS. STAT. § 938.18(5)(c). The State bears the burden of establishing a basis for waiver to adult court jurisdiction by clear and convincing evidence. *See* § 938.18(6). Both of these determinations, however, may be heard at one hearing: the waiver of jurisdiction hearing. *See P.A.K.*, 119 Wis. 2d at 883. That is precisely what happened in C.W.P.'s cases.

¶14    C.W.P. first contends that the circuit court did not make an "on the record" finding regarding prosecutive merit. He also contends that the court failed to address, on the record, the adequacy and suitability of the facilities, services, and procedures of the juvenile justice and mental health systems. Each of these failures, C.W.P. asserts, is an erroneous exercise of discretion and requires reversal of the waiver of juvenile jurisdiction. *See X.S.*, 402 Wis. 2d 481, ¶25. This court disagrees.

## I.    The circuit court did find prosecutive merit.

¶15    Three initial matters must be addressed before this court considers the first issue on appeal. To start, the record in this case is not complete. C.W.P. sought to have only the transcripts for the two waiver hearings (May 19, 2022, and July 8, 2022) prepared and filed. C.W.P. did not include transcripts of several other hearings where the issue of what precisely C.W.P. was contesting could have been discussed.[6] It is the appellant's responsibility to ensure a complete record on appeal. *See State v. McAttee*, 2001 WI App 262, ¶5 n.1, 248 Wis. 2d 865, 637 N.W.2d 774. Without these other transcripts, this court is unable to determine if the issue of prosecutive merit was raised in a prior hearing or if it was possibly even waived, given the high number of prior referrals, the felonious conduct alleged, and the fact that the second case involves conduct that occurred right outside the courtroom. This court further notes that "when an appellate record is

---

[6] A review of what record exists in this case shows that there were at least four other hearings without transcripts (either before a court commissioner or the circuit court) at which the issue of the waiver petition and prosecutive merit *could* possibly have been discussed. They were the initial temporary physical custody hearing (March 3, 2022) and three reviews of such placement (on March 30, 2022, June 24, 2022, and June 27, 2022).

incomplete in connection with an issue raised by the appellant, we must assume that the missing material supports the [circuit] court's ruling." *See Fiumefreddo v. McLean*, 174 Wis. 2d 10, 27, 496 N.W.2d 226 (Ct. App. 1993). The incomplete record could be dispositive of this issue; however, there is enough information in the record for this court to proceed on the merits.

¶16    Next, C.W.P. asserts that case law and/or the statute itself require that the circuit court make a finding of prosecutive merit on the record—and not just in the order waiving juvenile court jurisdiction.[7]  C.W.P. correctly notes that the statutory language requires the court to "determine whether the matter has prosecutive merit before proceeding to determine if it should waive jurisdiction." WIS. STAT. § 938.18(4)(a). And, "[i]f the court determines that the matter does not have prosecutive merit, the court shall deny the petition for waiver." *Id.* However, C.W.P. does not cite to any authority or statutory provision that requires the circuit court to make that finding "on the record." The legislature could have included that requirement in the relevant statutory provision and it did not. "As the court is fond of saying in statutory interpretation cases, if the legislature had intended to accomplish what a party is urging on the court ..., the legislature knew how to draft that language and could have done so had it wished." *Milwaukee J. Sentinel v. City of Milwaukee*, 2012 WI 65, ¶36, 341 Wis. 2d 607, 815 N.W.2d 367; *see also State v. Shirley E.*, 2006 WI 129, ¶44, 298 Wis. 2d 1, 724 N.W.2d 623.

---

[7] In the waiver orders, for which the circuit court used Wisconsin State Court Order Form JD-1723, the court specifically found that "[t]his matter has prosecutive merit."

9

¶17    In fact, the legislature explicitly required "on the record" findings with respect to the waiver criteria.  The statute (and subsequent case law) states that, with respect to a decision on waiver, "[a]fter considering the criteria under [WIS. STAT. § 938.18](5), the court shall state its finding with respect to the criteria *on the record*."  WIS. STAT. § 938.18(6) (emphasis added).  This is akin to the doctrine[8] of "expression unius exclusion alterius."

¶18    Finally, C.W.P. places much of his argument into the basket of "magic words" and seems to suggest that a circuit court must say them to adequately find prosecutive merit.  *See State v. Ziller*, 2011 WI App 164, ¶13, 338 Wis. 2d 151, 807 N.W.2d 241 (holding, albeit in a criminal sentencing context, that "[w]hile a circuit court must articulate the basis for its sentence, it is not required to use magic words"); *Michael A.P. v. Solsrud*, 178 Wis. 2d 137, 151, 502 N.W.2d 918 (Ct. App. 1993) (holding in a civil action regarding costs, that "the [circuit] court's failure to use the 'magic words' does not amount to reversible error").  It is clear that in the two waiver hearing transcripts *no one* said "prosecutive merit."  But that alone is not sufficient to determine that the circuit court, which signed the form orders waiving juvenile court jurisdiction stating that

---

[8] "Under the doctrine of <u>expressio unius est exclusio alterius</u>, the 'express mention of one matter excludes other similar matters [that are] not mentioned.'" *James v. Heinrich*, 2021 WI 58, ¶18, 397 Wis. 2d 517, 960 N.W.2d 350 (alteration and underlining in original) (quoting *FAS, LLC v. Town of Bass Lake*, 2007 WI 73, ¶27, 301 Wis. 2d 321, 733 N.W.2d 287).

it "finds prosecutive merit," erred.[9] There are several statements by the court that establish it considered and found prosecutive merit for each of C.W.P.'s cases. This court reviews the record with the directive that appellate courts look for reasons to sustain a circuit court's discretionary decision to waive juvenile court jurisdiction. *See **J.A.L.***, 162 Wis. 2d at 961; ***Loomans v. Milwaukee Mut. Ins. Co.***, 38 Wis. 2d 656, 662, 158 N.W.2d 318 (1968). It is with these three initial matters understood that this court proceeds to the merits of the first issue on appeal.

¶19 First, the two petitions, and the facts underlying them, must be summarized so that this court can ascertain if the circuit court considered the petitions in its oral ruling. In the first case (No. 2022JV30; Appeal No. 2022AP1317), C.W.P. was alleged to have engaged in several illegal actions on March 1, 2022. First, he showed a gun and threatened others at a gas station. Law enforcement then saw him walking away with a handgun, and he refused their commands to stop. C.W.P. put the gun to his head and threatened suicide several times before he ran away, only to stop on a nearby house's porch, where

---

[9] Without a doubt, the preferred practice is to have the circuit court inquire of the juvenile's counsel (at some point prior to or at the waiver hearing) whether prosecutive merit is being contested and, if so, to state with precision at the start of its oral ruling whether it finds prosecutive merit in the case. The statute contemplates such practice by requiring courts to inquire of the juvenile if there is no contest of prosecutive merit. *See* WIS. STAT. § 938.18(4)(c). When a circuit court does not make its finding on prosecutive merit clear, the appellate courts are required to scour the transcripts available to ascertain if such a finding was made (assuming that the circuit court's form order expressly finding prosecutive merit is not sufficient). In this case, there are sufficient statements on the record showing that the circuit court found prosecutive merit, so this court need not determine if the written form order alone satisfies the statute. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983) (when one issue is dispositive of an appeal, this court need not discuss other issues).

he engaged in a stand-off with law enforcement and pointed the gun at the police and himself. The family inside fled to their basement in panic.

¶20    In the second case (No. 2022JV54; Appeal No. 2022AP1240), C.W.P. was upset after a hearing at the courthouse and started yelling, swearing, and fighting with the deputies transporting him to secure custody. He tried to bite the deputies, grabbed their clothing, spat in the face of a deputy, and then lunged for a service weapon, saying several times he wanted officers to shoot him.

¶21    As part of the two waiver hearings, the circuit court took judicial notice of several aspects of the waiver petitions.[10]  First, the court was asked to consider the multiple placements for C.W.P. listed in each waiver petition. It took judicial notice of those as well as of C.W.P.'s prior cases/referrals that went to disposition in Winnebago County juvenile court. The court also took judicial notice of the facts in a prior robbery-with-gun case (No. 2020JV132).

¶22    Next, the circuit court watched two sections from the body cam video from law enforcement of the final part of the incident on March 1, 2022. C.W.P., too, watched those videos during the hearing and needed time to relax after seeing them. The court also watched five minutes of the April 20, 2022, courthouse altercation with deputies where C.W.P. attempted to obtain a service weapon. So, the court actually observed some of C.W.P.'s illegal conduct.

---

[10] Pursuant to WIS. STAT. RULE 902.01, a court may take judicial notice of adjudicative facts. *See Sisson v. Hansen Storage Co.*, 2008 WI App 111, ¶¶10-11, 313 Wis. 2d 411, 756 N.W.2d 667.

¶23    Finally, C.W.P. testified at the second hearing.  With respect to the March, 2022, incident, he denied flashing his gun under his shirt, but did admit that he ended up on another family's porch and was trying to get law enforcement to shoot him.  C.W.P. stated, "I understand that I have done some really big, bad decisions and just watching that video, just, it tore my heart apart.  It tore it apart because just seeing that I wanted to die so bad that day, it hurts me a lot."  With respect to his posthearing misconduct on April 20, 2022, he admitted he spat at someone but said he did not mean to grab the gun despite the video evidence.

¶24    The circuit court took all of those factors into consideration when it began its oral ruling noting that it "ha[d] experienced this" and had taken "copious notes, read transcripts, read files, [and] reviewed exhibits."  Several parts of the waiver petitions were taken upon judicial notice, thus, they were in evidence and conceded by C.W.P.  The actual events in both matters were shown in videos.  And, C.W.P. made concessions as to parts of his illegal conduct.  So, it was evident that the acts alleged by the State took place and that C.W.P. committed them.  Those facts from the waiver petitions were taken as true for the purpose of the waiver hearing.

¶25    Without using the words "prosecutive merit," the circuit court made findings on the record that indicated it was satisfied, to a reasonable probability, that the violations in the two delinquency cases had been committed and that the alleged acts were committed by C.W.P.  *See* ***T.R.B.***, 109 Wis. 2d at 192.  Those findings include the following:

> When I look at just the history of [C.W.P.'s] case before us, the one that has the change in placement, look at his contacts with the juvenile justice system and the referrals, it's significant.  And as has been testified to over 90

referrals that have been made for offenses that truly run the gamut.

Regarding Case No. 2022JV30, Counts 1 and 5:

Then it's these most recent events that occur and these events that have occurred, in this Court's eyes, are violent and they are progressing and the number of people that are at risk or in danger has increased. And it is no longer an attempt to self-harm. But it is risky behavior that leaves people exposed, that leaves children exposed.

….

The same as when you went on to that porch and there's a family inside with young children and if officers would have had to shoot you, there's never guarantee that it's one shot and it hits you.

Regarding Case No. 2022JV30, Counts 3 and 4:

The entire family was unsafe and every single deputy, 12 plus that responded, weren't safe. And they had no idea whether the firearm that you had was a real firearm or not.

It's not okay.

Regarding Case No. 2022JV30, Counts 1 and 3-5:

And quite frankly, I guarantee you not one single officer that arrived on that day would have wanted to be the officer that killed a 16 year old. It was dark. Low visibility. Residential neighborhood. And there's no guarantee your desire to go out by an officer, protecting the community, protecting their fellow officers, by taking you out. Quite frankly, it's selfish. It is very selfish.

And I take the testimony that we heard today, that it doesn't turn into this suicide by cop until after you have had contact with cops, after you have run from the cops.

Regarding Case No. 2022JV54:

And even after having stressed to this Court that the fact that you are even facing waiver was serious to you, was scary, we had an incident as what was depicted on the body cam from your last hearing and it was so extreme that Deputy Kaye testified that to have someone reach for another deputy's firearm was just a step before the worst.

14

And not only during that struggle, there was repeated commands, I mean, I could hear the officer saying, "Calm down, calm down." And instead of calming down, it escalated for whatever reason, but it escalated and there's spitting and there's reaching for the firearm, there's the kicking. And what I can't even begin to assume is that when given access or having the opportunity to grab an officer's firearm, that you would have not acted because you are in fact facing charges for what you say was an attempted suicide by cop.

And now here involves this courthouse because you don't get to go home, we have another incident. And I, just as those officers, the deputies couldn't guarantee that if you were able to get that, that it wouldn't have been you that would have been harmed, it would have been one of the deputies, it would have been a number of people that were standing outside this courtroom walking back and forth, minding their own business that could have been in harm[']s way.

Regarding both cases:

I agree that you need to address your mental health. You need to address the trauma that you have experienced and the trauma you continue to experience as you approach adulthood, but you have a tendency to act out when you don't get what you want. What led to the elevator incident was you not getting to go home, what led to the suicide by cops is you running from cops, getting caught on a fence, and then being confronted by cops.

These are serious offenses. And as I said, I agree, they are escalating to the point of reaching for a deputy's firearm in a courthouse.

….

And you have accumulated victims with names, faces, families, and an entire community.

¶26 Even one statement by the circuit court about each case would appear enough to determine that the court had found prosecutive merit, but when they are all taken together, there can be no doubt that such merit was found. The "magic words" need not have been said; the multiple references to the conduct

15

(especially here, where much of that conduct was recorded on video that was watched by the court) is sufficient.

¶27    It would have been much simpler if the circuit court, on the record, had said that it found prosecutive merit or if it had noted that the State had met its burden.  But the court considered[11] the statements of C.W.P. that appeared to substantiate the State's allegations (and C.W.P.'s apology for his conduct), as well as the videos it observed that showed illegal acts committed by C.W.P.  Those facts, taken with the deputy's testimony and the statements listed above, manifestly show a basis for the court to determine "that the record establishes to a reasonable probability that the violation of the criminal law alleged has been committed and that the juvenile has probably committed it." *P.A.K.*, 119 Wis. 2d at 875 (quoting *T.R.B.*, 109 Wis. 2d at 192).  Based upon all of these facts and statements made on the record (as well as the two signed orders), this court concludes that the circuit court, after considering the counts in both cases, found prosecutive merit as to both cases.

¶28    This court also must address several unpersuasive arguments raised by the State in support of finding prosecutive merit.  The State argues that the court commissioner's binding of the juvenile over to the circuit court was equivalent to a prosecutive merit finding.  That is not correct.  Binding over is not functionally the same as the requisite statutory finding of prosecutive merit, nor was it done by a circuit court.  The State also argues that C.W.P. did not contest

---

[11] Also of note is the fact that the circuit court, on May 19, 2022, granted the State's motion to have C.W.P. shackled for the next waiver hearing based on the petitions and his past behavior.  This further establishes that the court had determined that C.W.P. had committed at least some illegal acts.

prosecutive merit but stipulated to it by his statements at the hearings. That, too, is incorrect. If the State was aware that there was such a direct stipulation at another hearing, it should have sought that transcript for this appeal and supplemented the record. It did not. Moreover, the statute is very clear that such a concession must be addressed by the circuit court with the juvenile or counsel. *See* WIS. STAT. § 938.18(4)(c).

¶29    The State's final argument is that the petition alone can be a basis for finding prosecutive merit, *see* ***T.R.B.***, 109 Wis. 2d at 193-94, and that the State need not present any testimony or evidence in addition to the waiver and delinquency petitions, *see* ***P.A.K.***, 119 Wis. 2d at 873. This is correct, but it doesn't address whether the circuit court *found* these documents sufficient to find prosecutive merit. None of these arguments are persuasive.

¶30    Regardless, a review of the transcripts of the circuit court's conclusions, taken together with the judicially noticed facts and the concessions by C.W.P. that were bolstered by the videos of his conduct, leads inescapably to the conclusion that the court did find prosecutive merit. The court confirmed that finding by executing the orders that also contained that finding. Therefore, this portion of C.W.P.'s appeal fails.

## II.    The circuit court addressed the adequacy and suitability of the juvenile justice and mental health systems.

¶31    Once prosecutive merit has been found, the circuit court is to consider and weigh the statutory waiver criteria. *See* WIS. STAT. § 938.18(6). The decision to waive jurisdiction to adult court must be established, "by clear and convincing evidence, that it would be contrary to the best interests of the child or the public for the case to remain in the juvenile system." ***G.B.K. v. State***, 126

17

Wis. 2d 253, 255, 376 N.W.2d 385 (Ct. App. 1985). "In considering a waiver petition, the [circuit] court is to regard the best interest of the child as being the paramount consideration." *J.A.L.*, 162 Wis. 2d at 960. "The exercise of discretion incorporates a process of reasoning and proper explanation." *X.S.*, 402 Wis. 2d 481, ¶33; *see also* ***State v. Salas Gayton***, 2016 WI 58, ¶19, 370 Wis. 2d 264, 882 N.W.2d 459. It is not "the equivalent of unfettered decision-making." ***Hartung v. Hartung***, 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981). Discretionary determinations "must demonstrably be made and based upon the facts appearing in the record and in reliance on the appropriate and applicable law." ***Id.***

¶32 "Additionally, 'a discretionary determination must be the product of a rational mental process by which the facts of record and law relied upon are stated and are considered together for the purpose of achieving a reasoned and reasonable determination.'" ***Milwaukee Women's Med. Serv., Inc. v. Scheidler***, 228 Wis. 2d 514, 524, 598 N.W.2d 588 (Ct. App. 1999) (quoting ***Hartung***, 102 Wis. 2d at 66). In the context of weighing or balancing the waiver criteria, the juvenile court need not find that every criterion weighs against the juvenile before a waiver is appropriate. ***B.B. v. State***, 166 Wis. 2d 202, 209-10, 479 N.W.2d 205 (Ct. App. 1991). The circuit court "has discretion as to the weight it affords each of those criterion." ***Id.***; ***J.A.L.***, 162 Wis. 2d at 960.

¶33 C.W.P. contends that the circuit court failed to address and state its finding on the record with respect to the adequacy and suitability of the facilities, services, and procedures of the juvenile justice and mental health systems. *See* WIS. STAT. § 938.18(5)(c). The State, noting the various statements, references to testimony, and findings of the court, argues that the transcripts show the exact opposite. This court agrees. Although it would have been preferable had the

circuit court concisely and separately summarized all of the facts and testimony under each criterion and made findings that indicated whether they tilted the scale in favor of or against waiver, there is no requirement for such a neat outline.

¶34 The circuit court heard testimony from several witnesses who addressed this criterion. First, Dr. Miller, a licensed psychologist, testified about his evaluation of C.W.P. in August, 2021, (before either of the two relevant delinquency cases were filed) and his opinion that it was unlikely that traditional psychotherapy would lead to a sudden breakthrough for C.W.P. Miller stated that barring "miraculous outcomes," he

> would expect the behavior to continue largely because it's been going on for so long in multiple situations that the index offense, in this case getting violent with his family, was part of a much larger pattern that fits with a conduct disorder and the research on conduct disorder in particular with limited prosocial emotion does not suggest that treatment of any type is particularly helpful.

In fact, Miller believed that fear of lengthy incarceration could have a therapeutic effect on C.W.P. and that only the adult system would provide that effect. The court took judicial notice of Miller's report.

¶35 The State noted in both waiver petitions that C.W.P. will turn eighteen in December, 2023, and there was limited time to assist him in the juvenile system. The circuit court took judicial notice of all of the time C.W.P. spent in shelter care and in secure custody, as well as C.W.P.'s removal of his electronic monitoring.

¶36 The circuit court heard testimony from Navis, C.W.P.'s social worker. When asked about the possibility of C.W.P.'s dangerousness to the community and his lack of amenability to treatment, Navis responded as follows:

[ATTORNEY:] The adult system can provide supervision going beyond [C.W.P.]'s 18th birthday, correct?

[NAVIS:] They have the capability to, yes.

[ATTORNEY:] So you would agree that that's one thing the adult system can offer that simply isn't a possibility for [C.W.P.] in the juvenile system?

[NAVIS:] Yes.

[ATTORNEY:] Based on your knowledge of [C.W.P.]'s behaviors and that escalation of those behaviors that we talked about, do you believe the public would be safe in 18 months if [C.W.P.] had no sort of supervision or treatment requirements?

[NAVIS:] I don't know if I can answer specifically to that. Is it possible that if [C.W.P.] were to get treatment over the next 18 months in a setting where he cannot leave? I think it's possible that he could be safe in the community. I don't know for sure, but—

[ATTORNEY:] And it's also a possibility that he wouldn't be safe in the community?

[NAVIS:] If he doesn't respond to treatment, yes.

[ATTORNEY:] And historically he hasn't responded to treatment?

[NAVIS:] I would say, no, he hasn't at this point.

¶37 Doctor Patterson, another licensed psychologist, testified on C.W.P.'s behalf at the second waiver hearing and opined that the juvenile system would be more beneficial for C.W.P. However, Patterson conceded that in the six juvenile waiver cases she appeared in as an expert she had never recommended waiver, and also admitted that she had not reviewed any of C.W.P.'s mental health records and had only reviewed the delinquency and waiver petitions. Patterson was questioned about her description of C.W.P. as "an adolescent with untreated mental health concerns," and asked whether it would "be more accurate to say that he just isn't responding to the treatment he's been getting since 2017?" She

agreed that it would be "fair to say that for whatever reason, it's been ineffective in managing his mental health because yes, it looks like there had been attempts." Declining a request to have Miller testify in rebuttal regarding Patterson's findings, the circuit court compared the opinions of both doctors and stated that it would be weighing them, together with an understanding of Patterson's limited review, in its determinations regarding future treatment of C.W.P.[12]

¶38    The circuit court even personally questioned some of the witnesses to learn more about a proper placement for C.W.P., asking about level three foster homes, whether C.W.P. needs a higher level of services about residential treatment facilities, and about whether shelter or secure custody is necessary.

¶39    Each of these witnesses' testimony and the exhibits and reports covered the waiver criterion related to the adequacy and suitability of the juvenile justice and mental health systems.  The circuit court's statements during the waiver hearings and in its oral ruling must next be analyzed.  First, before counsel began closing arguments, the court appropriately and thoroughly addressed on the record what it had looked at regarding the waiver criteria in general:

> All right.  As far as argument, we can be brief.  I have experienced this, we can be very brief.  We do not have to recount the testimony that we heard.  I took copious notes, read transcripts, read files, [and] reviewed exhibits.  We can move to the crux of your argument.

¶40    Next, in its oral ruling, the circuit court addressed the efforts to provide C.W.P. with treatment, his amenability to treatment, and the adequacy of both the juvenile and adult systems as follows:

---

[12] The circuit court also noted that it got "the grasp of the competing opinions regarding mental health for [C.W.P.], treatment, and appropriateness for waiver or not."

I also take into consideration that [C.W.P.] has been in foster placement, he's been in Secure, he's been in shelter, Silvercrest, Winnebago Mental Health, and that likely plays a part into the mental health struggles that [C.W.P.] has. And when I look at prior treatment for that mental health, I understand that it is always an assessment, there's always the need to assess mental health, to assess whether the current treatment is working.

But what is also needed is for cooperation.

….

[B]ecause while I hear from you that you have been asking for help for so long, there's been attempts to get you help and you have decided to throw that away.

¶41 Finally, the circuit court summarized its reasons for determining that the waiver criterion of adequacy and suitability of the juvenile justice and mental health systems led inexorably to its decision to waive juvenile jurisdiction, to wit:

I agree with the Department and the State that waiver into adult court on the most recent offenses does not mean that you don't still get to avail yourself of the juvenile treatment that is necessary, but when I look at this criteria that I must look at and when I think about continuing to want you to have more chances, the seriousness of these offenses just outweigh[s] my desire for you to have another chance to go home.

What we have done previously hasn't worked. You have cutoff electronic monitoring, you have been home with mom, that hasn't been successful. You have been to Secure, you have been to shelter care, you have been to Winnebago Mental Health. The State has the burden to prove by clear and convincing evidence that it is not in your best interest or the interest of the community for you to remain in juvenile court and they have met that burden.

….

I am hopeful that you are going to get treatment. I am hopeful that once you have the right treatment, that you are going to hit the ground running …. Like I said, it's a constant assessment. And I just want to make sure that you have that because there's no other way to receive that while in the care of your mother, by Secure detention, and if

22

> Winnebago Mental Health is not giving you the level of treatment you need, the inpatient treatment in an institution is what is necessary.

¶42     This court must accept a circuit court's factual findings unless they are clearly in error. *J.A.L.*, 162 Wis. 2d at 966. "[T]o command a reversal, such evidence in support of a contrary finding must itself constitute the great weight and clear preponderance of the evidence." *Id.* (quoting *Cogswell v. Robertshaw Controls Co.*, 87 Wis. 2d 243, 249-50, 274 N.W.2d 647 (1979)). The deference to circuit courts' findings (with respect to its discretionary decisions) is because they "are in the best position to observe the facts and apply the law." *X.S.*, 402 Wis. 2d 481, ¶53 (citing *Tyler T.*, 341 Wis. 2d 1, ¶24). More specifically, the circuit court is the only entity that observes the witnesses, experts, and juvenile as they testify; its observation of facial expressions and other demeanor is critical to the weight to be given to witnesses' testimony.

¶43     The circuit court took care to outline what facts, testimony, and records it had considered in making its decision. It outlined these on the record, and it had previously taken judicial notice of several other facts. It personally questioned experts and witnesses to ascertain what treatment C.W.P. had already undertaken as well as his past lack of response and lack of effort with respect to treatment. The court noted its own recognition of C.W.P.'s lack of follow-through when treatment had been offered over the past five years. It inquired as to types of foster homes and residential homes that could assist C.W.P. The court weighed and contrasted the testimony of Doctors Miller and Patterson. All of these deliberations were placed on the record. Given all of these statements, this court concludes that the requisite finding was made on the record and that the circuit court did not erroneously exercise its discretion with respect to the waiver criterion

related to the adequacy and suitability of the juvenile justice and mental health systems.

## CONCLUSION

¶44　The circuit court found prosecutive merit with respect to both waiver petitions. The court's decision to waive juvenile jurisdiction over C.W.P. in both cases was not an erroneous exercise of discretion. The court correctly addressed the waiver criteria, identified the relevant facts with respect to the adequacy and suitability of the juvenile justice and mental health systems, and deliberatively applied the facts and testimony to that criterion. The court, then, reached a reasonable conclusion on the record that waiver of jurisdiction for C.W.P. was appropriate. C.W.P. has failed to show that reversal is warranted upon either ground in these consolidated appeals.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.